WATERFALL, ECONOMIDIS,
 CALDWELL, HANSHAW & VILLAMANA, P.C.
5210 E. Williams Circle, #800
Tucson, AZ  85711
(520) 745-7810
Fax (520) 745-1279

Barry Kirschner/PCC31284/SBN 005592
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| ALAN WRIGHT<br>    Plaintiff,<br><br>v.<br><br>RAYTHEON COMPANY SHORT TERM DISABILITY PLAN, RAYTHEON COMPANY LONG TERM DISABILITY PLAN, and METROPOLITAN LIFE INSURANCE COMPANY,<br>    Defendants. | No.:<br><br>**COMPLAINT**<br>(Employee Retirement Income Security Act) |

Plaintiff Alan Wright ("Wright") alleges:

1. Plaintiff Wright for relevant times has been an employee of Raytheon and a beneficiary of the employee benefit plans which are Raytheon Company Short Term Disability Plan and Raytheon Company Long Term Disability Plan ("Raytheon Plans"). Raytheon Plans have delegated relevant responsibilities for the administration and payment of the Plans to Metropolitan Life Insurance Company ("Met Life").

2. This Court has jurisdiction pursuant to 28 U.S.C. § 1132.  If it is determined at a later date that this claim is not governed by preemption of state law pursuant to the Employee Retirement Income Security Act ("ERISA"), this Court would have jurisdiction based upon diversity of citizenship pursuant to 28 U.S.C. § 1332. Declaratory relief is also sought pursuant to 28 U.S.C. § 2201 and 2202.

3. Wright resides in Pima County, Arizona.

4. Wright's former employer Raytheon Plans is a Defendant in this case as a result of the inappropriate claims handling and the breaches of fiduciary duty of its designated fiduciary for the Plan, insurance company MetLife

5. Defendant MetLife is an insurance carrier and, for purposes of the Employee Retirement Income Security Act ("ERISA"), the plan fiduciary of the relevant policies of short- and long-term disability insurance for which Wright is a beneficiary. MetLife has a conflict of interest in determining the rights of Plan beneficiaries. The more money is paid out to beneficiaries, the less money MetLife retains for its own assets or profit.

6. For the relevant time, Wright was an employee with an occupation of Senior Security Specialist. Wright's position required top secret national security clearance and vested him with extraordinary responsibility in protecting classified documents essential to national security. Wright's job responsibilities also included immediate inspection, and implementation of all security necessary, to protect all Raytheon employees and buildings at its Tucson facility on September 11, 2001 following the attack on the World Trade Center and Pentagon.

7. Wright suffers from obstructive airway disease, restrictive airway disease, non-union of his sternum secondary to open heart surgery and cardiac disease noted in 2002 with "extensive inferolateral wall myocardial infarction." He has suffered two significant heart attacks.

8. Wright is totally disabled under the terms of the Raytheon Company Short Term Disability Plan if, due to sickness or injury, he was unable to perform the essential elements of his regular job with reasonable accommodations.

9. Wright's condition and disability would convert to the Raytheon Company Long Term Disability Plan if he continued to be disabled and had been certified as

WATERFALL, ECONOMIDIS
5210 E WILLIAMS CIR #800
TUCSON, AZ 85711
520-745-7810 FAX 520-745-1279

BK/gg/10/12/05
F:\BK\Clients\Wright\Legal\Complaint FINAL.wpd

2

1   disabled for the purposes of the Short Term Plan.

2   10. Wright received medical advice to not return to work during several doctor visits in 2004. There was a more direct and compelling order from his primary treating physician Dr. Bradley Barnett on September 10, 2004 to stop working. His last date of work was September 9, 2004.

3   11. Prior to MetLife's initial denial of Wright's claim, it referred his case to an outside physician, Amy Hopkins. Hopkins has been affiliated with services marketing doctors to disability insurance carriers for opinions reviewing those of treating doctors.

4   12. Hopkins was such a favorite of MetLife that she would receive on **average 400-500 medical reviews annually** from September 1999 through 2004.

5   13. Hopkins noted that the file she reviewed on Wright had no pulmonary analysis documented, nor did she review complete records from Dr. Citron, the treating cardiologist.

6   14. Hopkins in October 2004 stated her recommendation: "The cardiology records, including all recent cardiac testing, should be obtained and evaluated."

7   15. Wight's claim for benefits was denied without MetLife requesting or receiving additional cardiac records or pulmonary analysis.

8   16. Wright diligently followed his administrative remedies by submitting formal appellate letters and supplements with medical records including those dated April 5, 2005, May 10, 2005, and May 19, 2005.

9   17. By letter dated June 30, 2005 MetLife through Disability Resource Specialist Maribeth Smoulcey again denied the claim of Wright citing that:

   a. "From a cardiac perspective **only** Mr. Wright could perform medium work;(Emphasis added);

   b. Wright's medical conditions were not sufficiently severe to render him

WATERFALL, ECONOMIDIS
5210 E WILLIAMS CIR #800
TUCSON, AZ 85711
520-745-7810 FAX 520-745-1279

BK/gg/10/12/05
F:\BK\Clients\Wright\Legal\Complaint FINAL.wpd

3

unable to perform his job duties; and

  c. Wright's limitations are predominantly related to morbid obesity, anxiety and depression.

18. After having reviewed the administrative file of MetLife, <u>it can now be determined that MetLife consulted a medical review service known as "Elite Physicians Ltd", a subsidiary of Network Medical Review ("NMR"). NMR physician Michael J. Rosenberg was hired to answer questions posed by MetLife personnel and to write an analysis which would support continued denial of the claim.</u>

19. Some of the indicators that the work of NMR physician Rosenberg and how it was applied by MetLife include misleading statements are:

  a. Rosenberg excludes from his analysis the possibility that Wright is disabled from obstructive airway disease, restrictive airway disease, intrathoracic airway obstruction, or the combination of those problems with Wright's other physical disabilities including his cardiac problems;

  b. Rosenberg changes language to describe the assessment of pulmonary specialist Dr. Scott Bronnimann from "Diffusion is markedly reduced but it does correct for alveolar volume" to eliminate *markedly*, and to add "normally" prior to alveolar volume;

  c. Rosenberg minimizes Bronnimann's significant assessment of "diffusion."

  d. Rosenberg alters <u>ab</u>normal left ventricular function to ". . .near normal left ventricular function. . ." to dismiss the significance of Wright's cardiac vulnerabilities;

  e. Rosenberg provides no analysis of the effect of the sternal non-union on Wright's continuing pulmonary problems and their expected relationship stressing the cardiac system;

  f. There is an attitude of blame in both the NMR physician's and Metlife's

WATERFALL, ECONOMIDIS
5210 E WILLIAMS CIR #800
TUCSON, AZ 85711
520-745-7810 FAX 520-745-1279

BK/gg/10/12/05
F:\BK\Clients\Wright\Legal\Complaint FINAL.wpd

4

writings on Wright for being obese and un-exercised, without addressing the analysis that Wright's breathing difficulties make it impossible for him to obtain the exercise necessary to work toward correction of his condition. Wright's inability to exert his heart to the level where a stress test could reach reliable levels is dismissed as unimportant;

g. Wright's occupation is dismissed as "sedentary" without any recognition for the stress which is a necessary byproduct of a job with such significant responsibilities;

h. MetLife posed the questions to the NMR physician: Are impairment severe enough to cause functional limitation to support claimant's inability to perform sedentary job duties from 09/09/04 to the present? On information and belief, the detailed job description furnished by Wright in his appeal was never furnished to the NMR physician;

i. MetLife posed the questions to the NMR physician: Do you agree with Mr. Wright's PCP that claimant is unable to perform any occupation at this time, and that he does not have any potential of return to work in the future? The relevant standard was whether Wright could perform the essential elements of his regular job with reasonable accommodation. The grave responsibilities of Wright's occupational responsibilities were never part of the materials furnished to the NMR physician;

j. The NMR physician denied that Wright's symptoms and impairments were substantiated by objective clinical evidence. This ignored pulmonary tests, including those showing that Wright's lung volumes confirm a significant impairment with his total lung capacity of 52% of predicted, with a residual volume of 25% of predicted. and sternal non-union and the expected impairments which may follow to breathing function and stress on the

WATERFALL, ECONOMIDIS
5210 E WILLIAMS CIR #800
TUCSON, AZ 85711
520-745-7810 FAX 520-745-1279

BK/gg/10/12/05
F:\BK\Clients\Wright\Legal\Complaint FINAL.wpd

5

cardiac system. It also discounted the decreasing ability of Wright to participate in four stress tests over three years because of his inability to breath comfortably enough under stress to continue with the treadmill; and

k.  The NMR physician and MetLife ignored the affect that pain killing medication taken by Wright would have on the required focus and clarity needed for a job dealing with highly classified top security matters related to national security.

20. MetLife has been affected by its conflict of interest and financial goals to maximize profits without regard to its fiduciary duties to Wright.

21. On information and belief, Defendant MetLife has referred Wright's case to biased outside physicians who have medical credentials but in fact are compromised in their judgment by financial consideration and/or training from MetLife, or the contractors through whom they work.

22. NMR, which for its business plan has distributed advertising to insurance companies advising them how NMR's founder, Dr. Bob Porter, has worked with insurance companies throughout much of his professional life with insurance claims departments, and how he has put together **"experts" who know what the insurance companies will need.**

23. NMR speaks through a coded language to insurance companies that it will be critical of the opinions of treating physicians in favor of claimants, and offer up purported justifications for denying or limiting claims.

24. On information and belief, MetLife's "outside" reviewing physicians such as Dr. Rosenberg are aware that reports deemed favorable by MetLife in assisting it to deny claims will increase the likelihood of retention for compensation on future referrals.

25. On information and belief, NMR advertises to insurance companies promoting itself

WATERFALL, ECONOMIDIS
5210 E WILLIAMS CIR #800
TUCSON, AZ 85711
520-745-7810 FAX 520-745-1279

BK/gg/10/12/05
F:\BK\Clients\Wright\Legal\Complaint FINAL.wpd

6

1   by signaling its intention to save the company money by assisting them in denying
2   benefit claims.

3   26. On information and belief, MetLife has memoranda or guidelines on when and how
4   to choose and instruct physicians which maximizes the possibility that these
5   physicians will not conclude the claimant has sufficient restrictions or limitations
6   to trigger or continue policy coverage.

7   27. On information and belief MetLife keeps some form of evaluation or scorecard
8   memorializing how often a medical reviewing doctor it has chosen writes a review
9   which assists it in denying, terminating or limiting its exposure on insurance claims
10  of insureds.

11  28. The opinions Defendant MetLife solicited and received by non-treating physicians
12  are a product of a corporate system tending to bias medical opinion into forms
13  which allow denials or terminations of benefits.

14  29. Opinions solicited and received by Defendant MetLife in providing the appearance
15  of a rationale for termination of benefits for weight were biased.

16  30. Consistent with Defendant MetLife's selfish intent which conflicts with that of
17  claimants like Wright and including Wright, Defendant MetLife ignored or
18  disregarded factual and logical errors from their reviewing physicians in their
19  attempt to justify termination of benefits.

20  31. Raytheon Plans and MetLife have breached their fiduciary duty owing to their
21  beneficiary Wright, and have acted with and been influenced by conflicts of interest
22  favoring their own financial interest in handling of the Wright claim. Defendant
23  MetLife has ignored the obvious data favorable to a decision to pay Wright in its
24  attempt to profit by not paying benefits deserved and owing to their beneficiary
25  Wright.

26  32. Defendants have chosen to draw all inferences in their favor and against continuing

WATERFALL, ECONOMIDIS
5210 E WILLIAMS CIR #800
TUCSON, AZ 85711
520-745-7810 FAX 520-745-1279

BK/gg/10/12/05
F:\BK\Clients\Wright\Legal\Complaint FINAL.wpd

7

1     or paying benefits to their insured/beneficiary Wright.

2  33. On information and belief, the pattern and practice of bad faith activities and/or
3     conflicts of interest for Defendants has previously been alleged by other claimants
4     of Defendants.

5  34. On information and belief, since on or about or shortly after the decision of the
6     United States Supreme Court in *Pilot Life v. DeDeaux*, 481 U.S. 41 (1987).
7     Defendants Raytheon Plans and MetLife have been aware that, through statute and
8     judicial interpretation, they have been given a functional immunity for any
9     emotional stress damage or punitive damages which might otherwise be available
10    as a remedy to claimants under ERISA policies who have been denied benefits in
11    bad faith.

12 35. Defendants Raytheon Plans and MetLife conduct has been an anticipatory
13    repudiation of its remaining contractual obligations to Wright, and justifies
14    acceleration of all benefits which may come due to Wright based upon his short-
15    term and long-term disability policy.

**COUNT I BREACH OF FIDUCIARY DUTY**

17 36. Plaintiff incorporates paragraphs 1 through 34 above as if fully set forth herein.
18 37. Defendants Raytheon Plans and MetLife have breached their fiduciary duty by
19    providing unequal and/or biased treatment to the claims of Wright for long-term
20    disability benefits, in part influenced by its selfish interests in violation of its
21    duties as a Plan fiduciary.

**COUNT II BREACH OF CONTRACT**

23 38. Plaintiff incorporates paragraphs 1 through 36 above as if fully set forth herein.
24 39. Defendants Raytheon Plans and MetLife have breached their contract and
25    contractual duties owing to Wright, depriving him of significant benefits he is
26    entitled to pursuant to the relevant policy. Wright has been substantially

WATERFALL, ECONOMIDIS
5210 E WILLIAMS CIR #800
TUCSON, AZ 85711
520-745-7810 FAX 520-745-1279

BK/gg/10/12/05
F:\BK\Clients\Wright\Legal\Complaint FINAL.wpd

8

1 damaged by that breach.

2 **COUNT III FOR DECLARATORY RELIEF/INJUNCTIVE RELIEF**

3 40. Plaintiff incorporates paragraphs 1 through 38 above as if fully set forth herein.

4 41. The acts of Defendants Raytheon Plans and MetLife violate the law including the exercise of Wright's right to fair and impartial consideration of his benefits claim and to receive benefits.

**WHEREFORE** this Court should enter its judgment in favor of Plaintiff Wright and against Defendants Raytheon Plans and MetLife to recover all benefits and damages owed to him from the Plan, to enforce his rights under the terms of the Plan including clarification of his right to future benefits under the terms of the Plan, to enjoin any act or practice which violates any provision of ERISA or the terms of the Plan, to obtain any other relief including equitable relief which may be warranted under the circumstances including addressing all violations by Defendants and awarding attorney fees to Wright pursuant to 29 U.S.C. § 1140 plus costs of suit, and all other relief which can be granted under the circumstances.

RESPECTFULLY SUBMITTED October 12, 2005.

WATERFALL, ECONOMIDIS, CALDWELL,
HANSHAW & VILLAMANA, P.C.


By   **s/**   _____
     Barry Kirschner
     Attorneys for Plaintiff

WATERFALL, ECONOMIDIS
5210 E WILLIAMS CIR #800
TUCSON, AZ 85711
520-745-7810 FAX 520-745-1279

BK/gg/10/12/05
F:\BK\Clients\Wright\Legal\Complaint FINAL.wpd

9