1   Timothy R. Hyland (I.D. No. 010298)
    Dominic L. Verstegen (I.D. No. 022308)
2   KUNZ PLITT HYLAND
    DEMLONG & KLEIFIELD
3   3838 North Central Avenue, Suite 1500
    Phoenix, Arizona 85012-1902
4   Email: trh@kunzlegal.com
    Email: dlv@kunzlegal.com
5   Tel:  (602) 331-4600
    Fax: (602) 331-8600
6
    Attorneys for Defendants Raytheon Company STD Plan,
7   Raytheon Company LTD Plan and Metropolitan Life Insurance Company

8                   IN THE UNITED STATES DISTRICT COURT

9                          DISTRICT OF ARIZONA

10
    Alan Wright,                        NO.  CIV 05-604 TUC CKJ (JCG)
11
                    Plaintiff,
12                                      **DEFENDANTS' RESPONSE TO
    vs.                                 PLAINTIFF'S BRIEF IN SUPPORT
13                                      OF HIS RIGHT TO CONDUCT
    Raytheon Company Short Term         DISCOVERY RE CONFLICT OF
14  Disability Plan; Raytheon Company   INTEREST**
    Long Term Disability Plan, and
15  Metropolitan Life Insurance Company, (Oral Argument Requested)

16                  Defendants.

17

18          Defendants Raytheon Company Short Term Disability Plan, Raytheon Company

19  Long Term Disability Plan, and Metropolitan Life Insurance Company (collectively

20  "Defendants"), by and through undersigned counsel, hereby submit their Response to

21  Plaintiff's Brief in Support of His Right to Conduct Discovery re: Conflict of Interest.

22  Defendants hereby ask the Court to rule that its review will be limited to the

23  Administrative Record, and no additional discovery will be permitted.  This case involves

24  a claim for both short term and long term disability benefits under an employee welfare

25  benefit plan governed by the Employee Retirement Income Security Act, as amended, 29

1   U.S.C. §1001 *et. seq.* ("ERISA").   Under ERISA, judicial review is limited to the

2   Administrative Record before the administrative decision maker.   Discovery would only

3   be permitted on limited grounds if plaintiff, who has the burden of proof, demonstrates

4   that there is probative evidence of a serious conflict of interest <u>and</u> that the conflict

5   actually influenced the claim decision.   No material probative evidence of an actual

6   conflict has been pointed to in the present case, nor has the factual predicate for even

7   asserting that one exists been shown.   For these reasons, the discovery which Plaintiff

8   allegedly seeks to explore as to this non-existent conflict should not be permitted.[1]

9        This Response is supported by the attached Memorandum of Points and

10   Authorities and the Court's entire file.

11                    **MEMORANDUM OF POINTS AND AUTHORITIES**

12   **I.      FACTUAL BACKGROUND**

13   **A.      Procedural Posture.**

14        Plaintiff Alan Wright (hereafter "Wright") was an employee of Raytheon

15   Company ("Raytheon"), and a participant in the Raytheon Short-Term and Long-Term

16   Disability Benefit Plans (hereafter the "Plans", or the "STD Plan" and the "LTD Plan").

17   The Plans are employee welfare benefit plans governed by ERISA.   The Plans were

18   established and are maintained by Raytheon. The STD Plan is funded through a group

19   insurance policy issued to Raytheon by Metropolitan Life Insurance Company

---

[1] It should also be noted that the discovery allegedly sought by Plaintiff's motion does not appear limited to only the "alleged" conflict issue.   Plaintiff states at p. 4 of his Motion that he is seeking Interrogatories, Requests for Production, Requests for Admission (which Plaintiff does not limit to those requests attached to the Motion**,** but expressly deems them only illustrative of all the additional information he plans to seek if the Court opens the door to discovery) <u>and</u> depositions of as many as six or more people including several doctors, claim handlers, 30(b)(6) witnesses and third party corporations. Plaintiff seeks to conduct impermissible bad faith discovery under the guise of a conflict of interest.

("MetLife").   The LTD Plan is funded by the Raytheon Employees Disability Trust, which is established through employee contributions.   MetLife is the designated claims administrator for the Plans.

Despite the general rule in ERISA cases that the matter should be decided on the Administrative Record without discovery, *Kearney v. Standard Ins. Co.,* 175 F.3d 1084, 1090 (9th Cir. 1999), Plaintiff's motion seeks to be allowed to conduct broad discovery requesting information about:

a.          Other claim files and litigated cases [See proposed NUI 1, 2 and 10; RFP 1 and 3,].

b.          Claims manuals and policies [See NUI 8; RFP 1 and 3].

c.          Financial information about third parties [See NUI 3, 4, 5, 6, and 7; RFA 6, 7,and 8].

d.          Internal MetLife proprietary information regarding analysis not related to the Plaintiff's claim [See RFP 3 and 4].

e.          Inadmissible reserve information [See NUI 9].

f.          Plaintiff's legal theories, conclusions and arguments of liability on the general case [See RFA 1, 2, 3, 4, 5, 10, and 11].

*See* Exhibits 3, 4 and 5 to Plaintiff's Brief in Support of His Right to Conduct Discovery re: Conflict of Interest.   Such "fishing expeditions" are not permitted in a non-ERISA action, let alone in a case governed by ERISA.   *See Kearney, supra.*

**B.       Summary of Claim.**

On or around September 9, 2004, Plaintiff stopped working due to complaints relating to coronary artery disease and his status post coronary bypass grafting surgery two years earlier.   Plaintiff submitted his claim for short-term disability benefits the next

day.  Plaintiff's family practice physician, Dr. Barnett, attested to the alleged disability.
MetLife investigated the claim and reviewed submitted medical information and
documentation.  On September 13, MetLife placed calls to Plaintiff and his supervisor,
Bill Berry, to discuss the claim, his job duties and alleged disability from working.

On September 23, MetLife submitted Plaintiff's file to an independent physician
consultant, Amy Hopkins, M.D., M.P.H., Ph.D., who is board certified in both Internal
Medicine and Occupational Medicine.  Dr. Hopkins evaluated all the medical information
and records regarding Plaintiff's condition. She found no medical evidence of any active
cardiac disease.  She also noted that Plaintiff claimed impairment from stress at work but
there was no indication of what at work was causing stress in Plaintiff's sedentary
occupation.  Dr. Hopkins specifically contacted and discussed Plaintiff's condition with
his treating physician, Dr. Barnett.  Dr. Barnett, in discussing the Plaintiff's condition,
admitted:

a.   He did not know the results of Plaintiff's stress tests;

b.   He did not know if the Plaintiff was undergoing any treatment or care for
stress;

c.   He did not know what it was about Plaintiff's job that was causing him
excessive stress;

d.   He stated that there had not been any changes in Plaintiff's treatment plan
as a result of the allegations that he could not work due to stress.

*See* Physician Consultant Review by Dr. Hopkins, dated October 4, 2004 attached as
Exhibit A.  Dr. Hopkins submitted the results of her review on October 4, 2004.  In her
report, she concluded a) that there was no information about what was causing Wright his
alleged debilitating stress, b) there was not treatment or a treatment plan for stress

- 4 -

1   management, and c) "there is no objective evidence in this file of any significant physical

2   impairment."  Exhibit A, p. 2.

3        After completing its review, on October 13, MetLife wrote to Plaintiff to inform

4   him that his claim for STD benefits was being denied.  The letter stated that there was no

5   information relating to any recent cardiology notes or stress testing to indicate any active

6   condition.   There was no evidence of any stress management treatment, program, or

7   medication.   The information, MetLife determined, did not support the existence of a

8   condition that would render Plaintiff totally disabled from performing his regular job

9   functions as a Senior Industrial Security Specialist as of September 10, 2004.  The letter

10  described the process whereby Plaintiff could request an appeal and review of the claim.

11  *See* Letter from Patricia A. Kinney, dated October 13, 2004, attached as Exhibit B.

12  Wright submitted an appeal on October 20.  Plaintiff's attorney filed a new appeal on

13  November 12, and again submitted a "formal appeal" on April 5, 2005.

14       MetLife reviewed all the information and documentation submitted by the Plaintiff

15  on appeal.   MetLife submitted Plaintiff's file to a different independent physician

16  consultant for another physician file review.  This time, the information was submitted to

17  Michael J. Rosenberg, M.D., who is board certified in Internal Medicine, Cardiology and

18  Interventional Cardiology.  Dr. Rosenberg reviewed the Plaintiff's medical records and

19  other documentation.[2]   He also spoke with Plaintiff's treating family physician, Dr.

20  Barnett and his cardiologist Dr. Citron.  In discussing Plaintiff's condition with Dr.

21  Citron, it was noted:

22  _____

23  [2] As part of this record review, Dr. Rosenberg also analyzed and considered the report of
    Dr. Scott Bronnimann, the Plaintiff's pulmonary doctor.  Dr. Rosenberg's analysis of
    these pulmonary records is contained in his report of June 14, 2005 and speaks for itself,
24  despite Plaintiff's desire to argue with the analysis and mischaracterize Dr. Rosenberg's
    conduct.  *See* Exhibit C, p. 2.

25                                                     - 5 -

a.   Dr. Citron and Dr. Rosenberg agreed that Plaintiff had "near-normal left ventricular function, no evidence of myocardial ischemia, and indications are stable from a cardiologist standpoint";

b.   Dr. Citron and Dr. Rosenberg agreed that from a cardiovascular perspective, on the basis of the available medical information, Plaintiff could not be stated to be totally unable to work.

*See* Report of Dr. Rosenberg, dated June 14, 2005, attached as Exhibit C, p. 3.  It was also noted that Plaintiff was morbidly obese and weighed 260 pounds at this bypass surgery and currently weighed approximately 280 – 300 pounds. *Id.*  Dr. Rosenberg's overall conclusion was that there were no significant functional limitations that would support Plaintiff's inability to perform his sedentary job duties.  MetLife sent this report to both of Plaintiff's treating physicians for comment.  *See* June 23, 2005 letters from Maribeth Smoulcey to Drs. Citron and Barnett, attached as Exhibit D.

After receiving no response from Plaintiff's physicians, MetLife sent a letter to Wright notifying him of its decision to uphold the denial of his claim because the medical information provided did not support the finding of a total disability as defined by the terms of the Plan.  The letter thoroughly explained the grounds for MetLife's decision, which included the terms of the Plans, the requirements of Plaintiff's position, all medical documentation submitted to MetLife, and the independent physician consultant's opinions of Dr. Rosenberg.  The letter also informed Plaintiff that it was a final decision and Plaintiff had exhausted his administrative remedies.  *See* Letter of Maribeth Smoulcey to Barry Kirschner, Esq., dated June 30, 2005, attached as Exhibit E.

. . .

. . .

- 6 -

**C.     The Terms of the Plans.**

The Summary Plan Description ("SPD") names Raytheon Company the plan administrator of the Plans.  *See* Excerpts of SPD, attached as Exhibit F, at ML/WRIGHT 0025.   MetLife is designated as the claims administrator for the Plans.   *Id*., at ML/WRIGHT 0038.  The SPD also states:

> **Final Decision**
>
> **Each claims administrator** for the welfare plans or the plan administrator for the Raytheon Savings and Investment Plan, including the Raytheon Stock Ownership Program, **has the authority to make final decisions with respect to paying claims.**  The plan administrator is responsible for making final decisions with respect to all other issues that may arise under the plans.
>
> **In making a final decision, the applicable claims administrator and the plan administrator have broad discretion in interpreting the meaning of plan provisions and in determining all questions arising under a plan, including, but not limited to, eligibility for benefits**. (emphasis added).

*Id*., at ML/WRIGHT 0022.

Under these provisions of the SPD, MetLife has discretionary authority to interpret the provisions of the Plans and to determine eligibility for and entitlement to disability benefits.  This authority is confirmed by provisions of the Plans.  The document entitled, "Your Employee Benefit Plan, Raytheon Company, Unified Plan Short Term Disability Benefits" states:

> In carrying out their respective responsibilities under the Plan, the Plan administrator (Raytheon Company) and other Plan fiduciaries, (MetLife) shall have discretionary authority to interpret the terms of the Plan and to determine eligibility for and entitlement to Plan benefits in accordance with the terms of the Plan.   Any interpretation or determination made pursuant to such discretionary authority shall be given full force and effect unless it can be shown that the interpretation or determination was arbitrary and capricious.

- 7 -

*See* Excerpts, attached as Exhibit G, at ML/WRIGHT 0064.  Additionally, the Raytheon Company Long Term Disability Plan (the "LTD Plan document") adds the following terms:

> 2.5    Claims Administrator means the Metropolitan Life Insurance Company or other entity or individual designated by the Plan Administrator to administer claims filed under this Plan.

(*See* Excerpts of LTD Plan document, attached as Exhibit H, at ML/WRIGHT 0068).

> 7.1    Designation of Plan Administrator.    The general administration of the Plan shall be the responsibility of the Company.  The Company shall be the Plan Administrator and named fiduciary for purposes of ERISA. The Plan Administrator and, **with respect to claims administration, the Claims Administrator, shall have the exclusive right, in their sole discretion, to interpret the Plan, make factual determinations and decide all matters arising thereunder, including the fight to remedy possible ambiguities, inconsistencies, or omissions. All determinations of the Plan Administrator and Claims Administrator with respect to any matter within their assigned responsibilities hereunder shall be conclusive and binding on all persons unless it can be shown that the interpretation or determination was arbitrary and capricious.**  (emphasis added).

(*Id.*, at ML/WRIGHT 0084).

> 7.3    Duties of Claims Administrator.  Determination of all claims for Benefits and questions which may arise under the Plan with respect to the payment of Benefits shall be made by the Claims Administrator in accordance with the provisions of the Plan and consistent with the Claims Administrator's fiduciary obligations. The Claims Administrator shall provide a full and fair review of any claim that is denied, in whole or in part. All decisions regarding claims for Benefits under the Plan shall be based on evidence satisfactory to the Claims Administrator. **The decisions of the Claims Administrator shall be conclusive and binding on all persons, unless a court of competent jurisdiction determines that such decision was arbitrary or capricious**.  (emphasis added).

(*Id.*, at ML/WRIGHT 0085).

> 8.5    Authority of Claims Administrator.    The Claims Administrator is the named fiduciary to whom the Plan grants full

1
2
3
4
5
6

> discretion, to interpret the Plan with respect to claims for Benefits; to determine whether a claimant is eligible for Benefits; and to resolve any other matter related to claims under the Plan (including appeals of denied claims), which is raised by a claimant or identified by the Claims Administrator. All questions arising from or in connection with the provisions of the Plan and its administration, not herein provided to he determined by the Plan Administrator, shall be determined by the Claims Administrator, and any determination so made shall be conclusive and binding upon all persons. The Claims Administrator may designate one or more of its members or any other person of its choosing to make any determination required to be made by the Claims Administrator under this ARTICLE.

7

(*Id.*, at ML/WRIGHT 0091-2).

8

9

10

11

Thus, MetLife was granted discretion under the Plans, and the abuse of discretion standard of review applies.  *See Jordan v. Northrop Grumman Corp. Welfare Benefit Plan,* 370 F.3d 869 (9th Cir. 2004); *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 102 (1988).[3]

12

## II.   ERISA LIMITS REVIEW TO THE ADMINISTRATIVE RECORD.

13

14

15

16

17

18

19

20

Under ERISA, review is limited to the Administrative Record whether the standard of review is de novo or abuse of discretion.  *Kearney v. Standard Ins. Co.,* 175 F.3d 1084, 1090 (9th Cir. 1999).  The reasoning behind this rule is the public interest in encouraging the formation of employee benefit plans and also the need for prompt and fair claims settlement procedures.  *Id.* (citing *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 54 (1987)).  ERISA "adopts a policy to increase the likelihood that beneficiaries will receive their full benefits and to maintain the premium costs of such systems at a reasonable level." *Id.*, at 1094.  It is well established that a "full trial" with evidence that

21

22

23

24

---

[3] Wright does not dispute the grant of discretion to MetLife. *See also,* Order dated January 27, 2006, in Griffin v. Raytheon Long Term Disability Plan No. 558 and Metropolitan Life Ins. Co., No. 3:04-CV-2179-D (N.D. Tex.); and Order dated July 8, 2004, in Gray v. Raytheon Company; Raytheon Company Long Term Disability Plan and Metropolitan Life Ins. Co., No. C03-5604 (W.D. Wash.) (determining that no apparent conflict exists with respect to the LTD Plan because MetLife does not pay benefits under the Raytheon LTD Plan) (attached as part of Exhibit I).

25

1   was not before the administrator "would undermine these policies." *Kearney,* 175 F. 3d at

2   1094.  Thus, ERISA claims are a "trial on the administrative record" to meet the goals of

3   "keeping costs and premiums down, and minimizing diversion of benefit money to

4   litigation expense." *Id.*  "This is vastly less expensive to all parties [and] accomplishes

5   the policies enacted as part of the statute."  *Id.*

6   
7   
8   

> [S]uch expanded review would impede an important purpose of the federal statute under which district courts have jurisdiction to review these administrative decisions: A primary goal of ERISA was to provide a method for workers and beneficiaries to resolve disputes over benefits inexpensively and expeditiously.

9   *Taft v. Equitable Life Assurance Soc'y,* 9 F. 3d 1469, 1471 (9th Cir. 1993).  Since this is

10  an ERISA governed matter, judicial review is limited to reviewing the record that was

11  before MetLife when it made its decision.

12  
13  **III.   SINCE METLIFE DOES NOT HAVE A SERIOUS CONFLICT OF INTEREST, NO DISCOVERY IS ALLOWED.**

14          Without providing facts that would be cognizable as supporting a serious conflict,

15  Wright argues a conflict of interest exists which allows this Court to consider evidence

16  outside of the Administrative Record.  A conflict of interest only allows the Court to

17  consider evidence outside the Administrative Record when it rises beyond the level of an

18  "apparent" conflict and is deemed a "serious" conflict of interest.  *Bendixen v. Standard*

19  *Ins. Co.,* 185 F. 3d 939, 943 (9th Cir. 1999).  The Ninth Circuit explained this conflict of

20  interest analysis as follows:

21  
22  
23  
24  

> Conflict of interest, for purposes of determining whether de novo review is appropriate despite an unambiguous conferral of discretion, does not mean that the plan has an interest that conflicts in the ordinary sense of the word with the interest of the claimant. … **A serious conflict can only be found when the beneficiary comes forward with "material, probative evidence, *beyond the mere fact of an apparent conflict*, tending to show that the fiduciary's self-interest caused a**

25

1

**breach of the administrator's fiduciary obligations to the beneficiary.**  (emphasis added)

2

*Jordan,* 370 F.3d at 875-6**;** *see also McDaniel v. Chevron Corp.,* 203 F. 3d 1099, 1107

3

(9th Cir. 2000).  Where an insurer has dual roles of serving as an administrator and a

4

funding source for the plan, an apparent conflict exists due to the economic stake in the

5

decision to award or deny benefits.  *Lang v. Long-Term Disability Plan of Sponsor*

6

*Applied Remote Tech., Inc.*, 125 F.3d 794, 798 (9th Cir. 1997); *Atwood v. Newmont Gold*

7

*Co., Inc.*, 45 F.3d 1317, 1322 (9th Cir. 1995).

8

Plaintiff has not demonstrated that MetLife was guided by a conflict of interest,

9

much less a "serious" conflict of interest so as to permit discovery.  Rather than meet this

10

burden of proof, Plaintiff seeks to go on a fishing expedition in the misguided hope of

11

creating a conflict or trying this case on extrinsic matters not before the administrator.

12

This type of baseless discovery is prohibited by the purpose of ERISA to provide a

13

method to resolve disputes inexpensively and expeditiously.  *Taft v. Equitable Life*

14

*Assurance Society,* 9 F.3d at 1472; *Newman v. Standard Ins. Co.,* 997 F. Supp. 1276,

15

1281 (C.D. Cal. 1998) ("Allowing the far-reaching discovery requested by Plaintiff

16

would completely frustrate this purpose [of ERISA]").

17

Here, there is no apparent conflict with respect to the LTD Plan because MetLife

18

does not have a dual role.  MetLife does not insure the LTD Plan and is not liable for

19

paying claims under the Plan.  Its only role is to determine whether the claimant qualifies

20

for benefits under the Plan.  Benefits are paid by the Raytheon Employees Disability

21

Trust – an entirely separate entity.[4]

22

---

[4] *See,* Order dated January 27, 2006, in Griffin v. Raytheon Long Term Disability Plan

23

No. 558 and Metropolitan Life Ins. Co., No. 3:04-CV-2179-D (N.D. Tex.); and Order dated July 8, 2004, in Gray v. Raytheon Company; Raytheon Company Long Term

24

Disability Plan and Metropolitan Life Ins. Co., No. C03-5604 (W.D. Wa.) (attached as part of Exhibit I).

25

1      While there is an apparent conflict with regard to the STD Plan, which is funded

2  through a group insurance policy issued to Raytheon Company by MetLife, there is *no*

3  *evidence* of a serious conflict, as defined under federal law.  In arguing a serious conflict

4  exists, Wright generally relies on two cases, *Tremain v. Bell Industries,* 196 F. 3d 970

5  (9th Cir. 1999), and *Lang v. Long-Term Disability Plan of Sponsor Applied Remote*

6  *Tech., Inc.*, 125 F.3d 794 (9th Cir. 1997).  Those cases do not allow discovery whenever

7  an apparent conflict exists; rather, those cases might be read to permit limited discovery

8  where there is specific factual evidence of the conflict affecting the decision.

9      In *Tremain*, the court applied the *de novo* standard of review and permitted

10  discovery after finding that the claims administrator applied the wrong definition of

11  disability and inconsistent reasons for denying benefits.  Here, MetLife applied the

12  correct Plan terms, and consistently applied them to the medical records.  *Tremain*, at

13  977.

14      In *Lang*, the court found a serious conflict to exist where an insurer initially

15  claimed there was insufficient evidence of fibromyalgia, later acknowledged the

16  existence of fibromyalgia, but inconsistently claimed it alone was not sufficiently

17  disabling.  *Lang*, at 799.  The insurer also used the incorrect Plan definition in making the

18  decision.  *Id*.  The court found this to be material and probative evidence to create a

19  rebuttable presumption that the insurer's decision was affected by a conflict of interest.

20  *Id*.

21      In the present case, no evidence of a serious conflict like that in *Tremain* or *Lang*

22  exists.  Instead Plaintiff disagrees with MetLife's determination of the claim and the

23  doctors' opinions.  Based on this disagreement, Plaintiff seeks to conduct extensive

24  discovery, through both written discovery (10 "Non-Uniform" Interrogatories, 5 Requests

25

1    for Production, and 11 Requests for Admission) and oral depositions, in order to search

2    for and hopefully find a possible serious conflict.[5]

3           Plaintiff's broad discovery tactic has been considered and rejected by at least two

4    courts in the Ninth Circuit, one in this district.  The court in *Newman v. Standard Ins.*

5    *Co.*, 997 F. Supp. 1276 (C.D. Cal. 1998) found that plaintiffs cannot merely seek to

6    pursue a "wild goose chase" by alleging a potential conflict of interest.  *Id.*  In *Newman,*

7    the court appropriated analyzed the Plaintiff's request to conduct discovery on an

8    unfocused, broad range of topics:

9               If this position were the law, then every ERISA case involving an
                administrator who is also the Plan funding source would involve far-
10              reaching, open-ended, nearly limitless discovery.  Plaintiff would
                depose reviewers, consulting physicians, and corporate officers of
11              plan administrators.  They could inspect claims manuals and other
                documents describing the claims review process, and personnel files,
12              employee evaluations, and other documents tending to show that
                employees of the administrator were pressured or rewarded for
13              denying claims.  Then, following this discovery, the issue of the
                decision maker's motivation would be extensively litigated, perhaps
14              involving days or weeks of testimony.  The expense of ERISA
                litigation could easily be more than the benefits at issue.
15

16   *Newman*, 997 F. Supp. at 1280-81.

17          This analysis is particularly apt here, where the fully-insured portion of the

18   benefits is less than $20,000 – hardly an amount that would cause a serious conflict of

19   interest, and less than the cost of the burdensome discovery Plaintiff seeks here.

20          Another district court in Arizona has come to the same conclusion.  As that court

21   recognized, "discovery should not be permitted merely because a plan administrator is

22   ─────────────────
     [5]   If all Plaintiff wanted to know was whether MetLife used Dr. Hopkins or Dr.
23   Rosenberg on other occasions, they already have that information.  *See* Exhibit 1 to
     Plaintiff's Brief.  The mere fact that a District Court in Tennessee apparently allowed
24   some limited discovery on the unknown facts of that case and the law that applies in a
     different jurisdiction does not mean there was a serious conflict in this case.

25                                          - 13 -

1    also the funding source for the plan.  To hold otherwise would be to permit discovery in

2    the majority of ERISA cases.  The Court agrees with the decision in *Newman* that making

3    such discovery commonplace would defeat a fundamental purpose of ERISA."[6]

4          Plaintiff attempts to argue that MetLife's frequent employment of Dr. Hopkins

5    and/or Dr. Rosenberg somehow is evidence of a serious conflict.  This argument fails not

6    only because the Ninth Circuit does not recognize the multiple use of a consultant

7    physician as a serious conflict, but also because logically and substantively, this is simply

8    not problematic.  MetLife handles tens of thousands of disability claims every year.

9          In making its claim determinations, MetLife is bound by the rules and regulations

10   governing claims procedure in the Code of Federal Regulations.  *See* 29 CFR § 2560.503-

11   1.  The regulations require that claims and appeals be determined within set time periods

12   and that in deciding an appeal of an adverse benefit determination based on a medical

13   judgment, the plan fiduciary deciding the claim must consult with a health care

14   professional.  *See* 29 CFR § 2560.503-1(f)(3), (h)(3)(iii), (h)(4), & (i)(3)(i).  To comply

15   with the Federal Regulations, MetLife must have vendors it can submit medical records

16   to for a timely review.  *See Leahy v. Raytheon Co.*, 315 F.3d 11, 16 (1st Cir. 2002).  To

17   identify and employ different physician consultants for each of those cases is completely

18   unrealistic.

19         MetLife is the second largest provider of group disability insurance in the United

20   States and provides disability coverage to 3.5 million employees. *See* MetLife's website:

21   www.metlife.com.[7]  Due to the large number of claims MetLife handles, it must have

---

22   [6] *See* Order dated July 15, 2005, in Wilcox v. Metropolitan Life Ins. Co., No. CV-04-926-
     PHX-DGC (attached as part of Exhibit I), at pp. 2-3.

23   [7]

24   http://www.metlife.com/Applications/Corporate/WPS/CDA/PageGenerator/0,1674,P556,
     00.html (last visited March 16, 2006).

25                                          - 14 -

1    independent vendors that it can submit medical records to for a medical review.  Based

2    on Plaintiff's arguments, the only way MetLife could have satisfied Plaintiff's standard

3    for impartiality would be to seek physicians willing to volunteer their time to review the

4    medical files of disability claimants.  *See Sweatman v. Commercial Union Ins. Co*., 39

5    F.3d 594, 601 n.14 (5th Cir. 1994).

6    Moreover, Plaintiff's allegation that such a conflict is recognized under *Regula v.

7    Delta Family-Care Disability Survivorship Plan*, 266 F.3d 1130 (9th Cir. 2001) is

8    specious.  First, that decision was reversed in *Nord v. Black & Decker Disability Plan,*

9    538 U.S. 822 (2003); *see also Jordan v. Northrop Grumman Corp. Welfare Benefit Plan*,

10   370 F.3d 869, 878-879 (9th Cir. 2004) (the Ninth Circuit acknowledged that the Supreme

11   Court had "roundly rejected" its decision in *Regula* and rejected "all our reasons" for the

12   rule).

13   Second, the quotation from *Nord* contained in Plaintiff's Motion is clearly used in

14   a misleading fashion.  While the Court stated that there might be concern with repeated

15   use of physician consultants, the Court continued in the very next sentence to state:

16   
17   But the assumption that the opinions of a treating physician
     warrant greater credit than the opinions of plan consultants
18   may make scant sense when, for example, the relationship
     between the claimant and the treating physician has been of
19   short duration, or when a specialist engaged by the plan has
     expertise the treating physician lacks.  And if a consultant
20   engaged by a plan may have an incentive" to make a finding
     of "not disabled," so a treating physician, in a close case, may
21   favor a finding of "disabled."

22   *Nord*, 538 U.S. at 832.  Thus, the Supreme Court rejected both assumptions or at least did

23   not assume there was a material conflict with the repeated use of physician consultants.

24   

25                                                       - 15 -

1    Finally, NMR is a medical consulting firm, unaffiliated with MetLife, hired on a
2    contractual basis to provide physicians to review claims, while Dr. Hopkins is an
3    Independent Physician Consultant. *See Sweatman*, 39 F.3d at 601 n.14 (5th Cir. 1994)
4    ("UMAC's doctors are independent consultants because MetLife hires UMAC on a
5    contractual basis"); *Durr v. Metropolitan Life Ins. Co*., 15 F. Supp. 2d 205, 208 (D. Conn.
6    1998) ("NMR is a medical consulting firm unaffiliated with MetLife."). Like the
7    employee in *MacLachlan v. ExxonMobil Corp.* who was asked for information on
8    historical interpretations of the plan at issue, but did not make the claims determination,
9    the doctors are independent consultants who did not make the claim decision.  *See*
10   *MacLachlan*, 350 F.3d at 472, 479-80 (5th Cir. 2003) (ExxonMobil's benefit counsel
11   advised the plan administrator, but the decision and interpretation was that of the plan
12   administrator); *see also Sweatman*, 39 F.3d at 603.    In *Abromitis v. Continental Cas.*
13   *Co./CNA Ins. Co*., 261 F. Supp. 2d 388 (W.D. N.C. 2003), the court refused to allow the
14   plaintiff to conduct discovery regarding an outside consultant, ruling that information
15   related to the consultant was not necessary, because it was not the consultant's decision
16   that the court was reviewing.  Rather, the court was reviewing the claim decision of the
17   insurer, and the requested information did not relate to the insurer's potential conflict of
18   interest.  Further, the court explained that expanding the scope of conflict-of-interest
19   discovery to include information regarding an independent consultant would increase
20   both the time and expense involved in reviewing ERISA benefit decisions, a problem
21   courts have expressly stated that they wish to avoid.  *Id*. at 391.

22   **IV.   <u>CONCLUSION</u>**

23   The only admissible evidence in this case is the Administrative Record because
24   the Plan gives MetLife discretionary authority and MetLife does not have a serious

25                                              - 16 -

1   conflict of interest.  In consideration of the foregoing, Defendants ask this Court to deny

2   Plaintiff's motion.   Alternatively, if the Court determines that some discovery may be

3   conducted, it is requested that the Court specifically denominate and limit the discovery

4   to specific factual allegations of alleged material conflict of interest.

5             RESPECTFULLY SUBMITTED this _____ day of March, 2006.

6

7                      KUNZ PLITT HYLAND
                         DEMLONG & KLEIFIELD

8                      A Professional Corporation

9

10                   By_____

11                         Timothy R. Hyland
                         Dominic L. Verstegen

12                       3838 North Central Avenue, Suite 1500
                       Phoenix, Arizona  85012-1902

13                       Attorneys for Defendants

14   ORIGINAL of the foregoing electronically
     filed this ____ day March, 2006, with:

15

16   Clerk
     United States District Court
     District of Arizona

17   405 W. Congress St., Ste. 3160
     Tucson, AZ  85701-5033

18

19   COPY of the foregoing electronically
     served this ____ day of March, 2006:

20   Barry Kirschner
     Waterfall, Economidis, Caldwell,

21   Hanshaw & Villamana, P.C.
     5210 E. Williams Circle, Ste. 800

22   Tucson, AZ  85711
     Attorneys for Plaintiff

23

24

25                                - 17 -

And a COPY mailed this same date to:

The Honorable Cindy K. Jorgenson
United States District Court
District of Arizona
405 W. Congress St., Ste. 3160
Tucson, AZ  85701-5033

The Honorable Jennifer C. Guerin
United States District Court
District of Arizona
405 W. Congress St., Ste. 3180
Tucson, AZ  85701-5031

_____