`WATERFALL, ECONOMIDIS,
  CALDWELL, HANSHAW & VILLAMANA, P.C.
5210 E. Williams Circle, #800
Tucson, AZ  85711
(520) 745-7810
bkirschner@wechv.com

Barry Kirschner/PCC31284/SBN 005592
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| ALAN WRIGHT,<br>     Plaintiff,<br><br>v.<br><br>RAYTHEON COMPANY SHORT TERM DISABILITY PLAN,<br>RAYTHEON COMPANY LONG TERM DISABILITY PLAN, and METROPOLITAN LIFE INSURANCE COMPANY,<br>     Defendants. | No.:  CIV 05-604 TUC CKJ (JCG)<br><br>**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF HIS RIGHT TO CONDUCT DISCOVERY RE CONFLICT OF INTEREST** |

## I.     THE FEDERAL RULES OF CIVIL PROCEDURE APPLY TO THIS ACTION

Plaintiff  Alan Wright's ("Wright") discovery request seeks nothing more than the use of the Federal Rules of Civil Procedure ("FRCP").  FRCP 1 and FRCP 2 apply to all suits of a civil nature including Wright's.   FRCP 1 states:  These rules govern the procedure in the United States district courts in all suits of a civil nature whether cognizable as cases at law or in equity . . ."  FRCP 2 states:  "There shall be one form of action to be known as 'civil action'."  This is a civil action.  Defendants cite no authority for the proposition that Rules 1, 2, or 26(b) of the FRCP do not apply.

The scope of discovery is addressed by FRCP 26(b) **Discovery Scope and Limits**.

 "Unless  otherwise limited by order of the court in accordance with these rules, the scope of discovery is as follows:

(1) **In General.**  Parties may obtain discovery regarding any

>matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."

## II. WHETHER MET LIFE HAS ACTED WITH A CONFLICT OF INTEREST WHICH HAS RISEN TO THE POINT OF BIAS IN ITS DECISION MAKING IS IN DISPUTE

Whether Met Life has acted with a conflict of interest which has risen to the point of bias in its decision making is in dispute. Tremaine v. Bell Industries, Inc., 196 F.3d 970 976 (9th Cir. 199). Wright's Complaint lists multiple reasons why a finder of fact could conclude that the inherent conflict of interest of an insurance company ruling against a beneficiary to save money may have risen to the bias standard in this case. Medical reviews were conducted by persons who are, or who are affiliated with, a big business of providing reports to MetLife and similarly situated insurance companies. If this could not contribute to a finding of bias, the United States Supreme Court would hardly have stated, "Nor do we question the Court of Appeals' concern that physicians repeatedly retained by benefit plans may have an incentive to make a finding of not disabled in order to save their employers money and to preserve their own consulting arrangements." 538 U.S. 822, 832 (2003).

Defendants seek to prohibit discovery. They argue that, since MetLife does not have a serious conflict of interest, no discovery is allowed. *See* opposition at page10, lines 12-13. This places the cart before the horse. Discovery of facts is generally considered helpful in the search for truth to prove contested allegations of the Complaint. *See* FRCP 26(b)(1). The Court and not MetLife will decide whether a conflict of interest requiring a *de novo* standard of review will apply.

Defendants accuse Wright of engaging in a fishing expedition to obtain discovery such as:

WATERFALL, ECONOMIDIS
5210 E WILLIAMS CIR #800
TUCSON, AZ 85711
520-745-7810 FAX 520-745-1279

BK/gg/3/27/06
Reply FNL.wpd

2

1. Plaintiff's Request to Produce no. 3, "All guidelines in effect at MetLife any time since January 1, 2000 for the selection of 'independent reviewers' of medical files for ERISA disability cases." Let us assume that MetLife has internal guidelines which state that it is interested in medical doctors who will advocate against disability in almost every instance. Under MetLife's theory of discovery, such a blatant instruction would go undetected because it could not be learned in discovery.

2. Plaintiff's Non-Uniform Interrogatory no. 2, "Has any case in which Dr. Amy Hopkins and/or Dr. Michael J. Rosenberg reviewed files for Metlife been determined by a court to have been part of a conflict of interest resulting in a de novo standard of review?" If there is no such case, MetLife would know it easily. If there have been other cases where courts have determined that a conflict of interest has existed where MetLife has hired Dr. Hopkins or Dr. Rosenberg, there is no reason why FRCP 26(b) would not authorize Wright to discover that information which, at a minimum, may lead to admissible evidence.

3. Plaintiff's Request to Produce no. 4, "All analyses, including any mathematical or statistical calculation, of the work performed by Dr. Amy Hopkins, Dr. Michael J. Rosenberg, Elite Physicians Ltd; Network Medical Review; or Sandpiper, LLC for MetLife." If MetLife keeps a scorecard on how often it uses these doctors or medical review services to deny or terminate benefits, that would be highly informative regarding MetLife's conflict of interest rising to the level of bias.

4. Similarly MetLife asked the Court to excuse it from answering Plaintiff's Request for Admission no.5, "No medical doctor considered pulmonary disability as a factor in arriving at a conclusion that Wright was not disabled." A review of the administrative record ("AR") shows that the statement is clearly true and that MetLife should admit it. This would save Plaintiff and the Court significant time and resources. If MetLife can deny it in good conscience, there is nothing wrong with MetLife being

WATERFALL, ECONOMIDIS
5210 E WILLIAMS CIR #800
TUCSON, AZ 85711
520-745-7810 FAX 520-745-1279

BK/gg/3/27/06
Reply FNL.wpd

3

1 required to explain where in the AR any doctor considered whether Wright suffered
2 from a disabling combination of <u>pulmonary</u> illness, sternal non-union, and cardiac
3 disease.

### III. DISCOVERY AND THE ECONOMICS OF AN ERISA DETERMINATION

Discovery allows a more efficient and fair judicial process. This has been recognized since the FRCP was adopted in 1938. It is true in this case as well. Several additional illustrations of why the discovery Wright has requested is helpful to promoting an efficient and fair determination are explained below.

#### A. Requests for admission are an effective tool for narrowing the scope of issues under consideration.

Wright's evidence showed that his doctors had conducted studies and concluded that he was disabled from a combination of disease including non-sternal union and restrictive and obstructive airway diseases. Request to Admit 11 states: "MetLife did not make an assessment of whether the total combination of Wright's impairments, including obstructive airway disease and restrictive airway disease, met the Plan definition of disability. Admit _____ Deny _____." An "admit" to this question establishes that Defendant breached its duty to ". . .make a reasoned assessment of whether the total combination of a claimant's impairments justify a disability finding, even if no single impairment standing alone would warrant the conclusions." *Nickola v. CNA Group Life Assurance, Co.*, 2005 WL 1910905 (N.D. Ill.); citing (at page 9 and footnote 8) to *Austin v. Continental Cas Co.*, 216 F. Supp 2d 550, 558 (W.D.N.C. 2002). If Defendant denies this Request and answers the related interrogatory asking for an explanation of its justification for the denial, litigants and the Court will have the opportunity to look at the AR page where this was considered, saving everybody a lot

WATERFALL, ECONOMIDIS
5210 E WILLIAMS CIR #800
TUCSON, AZ 85711
520-745-7810 FAX 520-745-1279

BK/gg/3/27/06
Reply FNL.wpd

4

of time.[1]

### B. Whether MetLife and its doctors were interested in cherry picking information to support a denial rather than getting to the truth is to be decided by the Court

Defendants' Opposition Memorandum argues that it complied with its duties in part because of conversations between it's retained paper-reviewing doctors who spoke with treating physicians. But the AR also contains an October 18, 2004 letter from treating physician Dr. Bradley Barnett which states,

> "I am gravely disturbed by your misrepresentation of the facts with regard to my discussion with your independent physician consultant and your lack of due diligence in collecting further medical information regarding Mr. Wright's health condition. You indicate in your letter that 'it was concluded that you are out of work primarily due to work related stress.' I spent over 30 minutes on the phone with your independent physician consultant explaining that this was definitely not the case. Indeed, this consultant seemed to have had a preconceived notion that stress was why the patient was out of work and that there was no cardiovascular disease contributing." Exhibit 1, ML/WRIGHT 0157-58.

### IV. DIRECT EVIDENCE EXPLAINING ALTERATIONS OF MEDICAL LANGUAGE TO DE-EMPHASIZE THE SEVERITY OF WRIGHT'S DISABLING CONDITIONS CAN AND SHOULD BE OBTAINED.

Dr. Bronnimann wrote: "Diffusion is markedly reduced but it does correct for alveolar volume. This indicates that the decreases in diffusion is directly related to the reduced alveolar volume within the thorax." Exhibit 1, ML/WRIGHT 0476.

Dr. Rosenberg wrote, "The diffusion capacity was reduced but corrected normally for alveolar volume. (Exhibit 1, ML/WRIGHT 0444 which renumbers AR Met00162 in tab 2 of Wright's Brief.)

Medical discovery would establish that Dr. Bronnimann's use of "diffusion" was to describe physical properties of oxygen that allow it to travel across the alveolar

---

[1] MetLife's Dr. Rosenberg continually qualified his conclusions with, "Other co-morbidities, such as- morbid obesity -restrictive lung disease - Anxiety depression Are separate considerations"; and "From a cardiovascular standpoint" (Exhibit 1, ML/WRIGHT 0446-47 which renumbers AR Met00164 and 165 in tab 2 of Wright's Brief.)

WATERFALL, ECONOMIDIS
5210 E WILLIAMS CIR #800
TUCSON, AZ 85711
520-745-7810 FAX 520-745-1279

BK/gg/3/27/06
Reply FNL.wpd

5

1   membrane into the bloodstream.  In the language of pulmonology, a capacity is defined
2   as a sum of two lung volumes.  Dr. Bronnimann's opinion is that the decrease in
3   diffusion is directly related to the reduced alveolar volume within the thorax, and
4   illustrates a moderately <u>severe</u> restrictive lung impairment.  Dr. Rosenberg's turn of
5   several words with the introduction of "capacity" and "normally" and the deletion of
6   "markedly" and, "This indicates that the decrease in diffusion is directly related to the
7   reduced alveolar volume within the thorax", twists the opinion of Dr. Bronnimann from
8   a very significant problem to gibberish.

9       Dr. Rosenberg's report was disclosed only after the denial of Wright's appeal by
10  MetLife.  Wright has had no opportunity to rebut this commentary by the "independent"
11  reviewer whose opinion was the basis for MetLife's denial.  With a closed AR and (if
12  this Court were to rule) an inability to do discovery, Wright is severely prejudiced.
13  Economy in litigation is important, but there is no school of law which describes it as
14  trumping the need for seeking truth, and applying the law to facts correctly found.

15  **V.    DEFENDANTS' CITATION TO UNPUBLISHED CASES**

16      At Exhibit I of its Opposition to discovery, Defendant cites two unpublished
17  decisions; one denying an additional round of discovery, and the other appearing to
18  deny discovery at all in ERISA cases in which MetLife is a Defendant.  The citation of
19  these unpublished cases illustrates the advantage MetLife seeks by keeping its
20  adversary, and the Court, in the dark about the handling of its fiduciary obligations.
21  MetLife likely generates over 400 denials and terminations of benefits annually just in
22  the cases in which it hires Dr. Hopkins.  There are multiple unpublished discovery
23  orders that MetLife must respond to discovery in ERISA cases.  Discovery relating to
24  conflict of interest issues in ERISA cases is common place, and Defendant knows it.
25  *See, e.g.* Thomas Wright v. Metropolitan Life Supplemental Response to Plaintiff's
26  First Set of Interrogatories at tab 1 of Wright's Brief in support of this discovery

WATERFALL, ECONOMIDIS
5210 E WILLIAMS CIR #800
TUCSON, AZ 85711
520-745-7810 FAX 520-745-1279

BK/gg/3/27/06
Reply FNL.wpd

1  Motion.

2  **VI.  CONCLUSION**

3      For the reasons set forth above, the Federal Rules of Civil Procedure should

4  apply to this case, discovery should be allowed to proceed on evidence which may be

5  admissible or lead to admissible evidence regarding the bias of Defendant and those

6  chosen by Defendant to make its case(s) for them, and Wright should be authorized to

7  proceed in accordance with the FRCP and the proposed discovery attached as tabs 3-5

8  of his Brief in support of this Motion.

9      RESPECTFULLY SUBMITTED March 27, 2006.

10      WATERFALL, ECONOMIDIS, CALDWELL,
       HANSHAW & VILLAMANA, P.C.

11

12      By  **s/**
           Barry Kirschner
13          Attorneys for Plaintiff

14  ORIGINAL of the foregoing filed
   electronically March 27, 2006 with:
15
   U. S. District Court of Arizona
16  405 W. Congress
   Tucson, AZ  85701
17
   COPIES of the foregoing and the NEF
18  delivered March 27, 2006 to Judge CKJ (JCG)

19  COPY of the foregoing provided
   March 27, 2006 through NEF to:
20
   Timothy R. Hyland, Esq.
21  Dominic L. Verstegen, Esq.
   Kunz, Plitt, Hyland
22    Demlong & Kleifield, P.C.
   3838 N. Central Ave., Ste. 1500
23  Phoenix, AZ  85012-1902
   Attorneys for Defendants:
24
   By  s/
25      Glades Guisinger

26

WATERFALL, ECONOMIDIS
5210 E WILLIAMS CIR #800
TUCSON, AZ 85711
520-745-7810 FAX 520-745-1279

BK/gg/3/27/06
Reply FNL.wpd

7