Timothy R. Hyland (I.D. No. 010298)
Dominic L. Verstegen (I.D. No. 022308)
**KUNZ PLITT HYLAND**
**DEMLONG & KLEIFIELD**
A Professional Corporation
3838 North Central Avenue, Suite 1500
Phoenix, Arizona 85012-1902
Email: trh@kunzlegal.com
Email: dlv@kunzlegal.com
Tel: (602) 331-4600
Fax: (602) 331-8600

Attorneys for Defendants Raytheon Company STD Plan,
Raytheon Company LTD Plan and Metropolitan Life Insurance Company

# IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Alan Wright,<br><br>              Plaintiff,<br><br>vs.<br><br>Raytheon Company Short Term Disability Plan; Raytheon Company Long Term Disability Plan, and Metropolitan Life Insurance Company,<br><br>              Defendants. | NO. CIV 05-604 TUC CKJ (JCG)<br><br>**DEFENDANTS' OBJECTIONS TO MAGISTRATE'S ORDER DATED APRIL 19, 2006** |

Pursuant to Rule 72(a), *Federal Rules of Civil Procedure*, Defendants Metropolitan Life Insurance Company ("MetLife"), Raytheon Company Short Term Disability Plan ("STD Plan"), and Raytheon Long Term Disability Plan ("LTD Plan") hereby file their objections to the Order entered by Magistrate Guerin, on April 19, 2006[1] ("Order"), regarding Plaintiff's ability to conduct discovery on the issue of a conflict of

---

[1] It must be noted that while the Order is dated April 19, 2006, the Order was not filed and thereafter electronically served on Defendants until April 20, 2006. A copy of the Order is attached as Exhibit 1 for ease of the Court.

interest. Defendants respectfully submit that the Order is not supported by the law or the record in this case. Moreover, the discovery allowed by the Order is contrary to the public policy underlying the procedure governing litigation under the Employee Retirement Security Act, as amended, 29 U.S.C. 1001 *et. seq.* ("ERISA"). Defendants request that the Magistrate's Order be reversed and set aside and that Plaintiff not be allowed to conduct discovery in this matter. These Objections are supported by the Exhibits attached hereto and the Court's entire file herein.

I.  **INTRODUCTION**

Defendants submit this brief Introduction to Court of the facts and legal dispute so as to place its specific Objections to the Order in context.

A.  **FACTUAL BACKGROUND**

Plaintiff Alan Wright ("Plaintiff") was an employee of Raytheon Company ("Raytheon"), and a participant in the Raytheon Short-Term and Long-Term Disability Benefit Plans. The Plans are employee welfare benefit plans governed by ERISA. The Plans were established and are maintained by Raytheon. The STD Plan is funded through a group insurance policy issued to Raytheon by MetLife. The LTD Plan is funded by the Raytheon Employees Disability Trust, which is established through employee contributions. MetLife is the designated claims administrator for the Plans. Plaintiff has brought this action asserting that Defendants have violated ERISA by denying him disability benefits under the Plans. *See* Order, p. 1.[2]

The Summary Plan Description ("SPD") names Raytheon Company the plan administrator of the Plans. MetLife is designated as the claims administrator for the

---

[2] Defendants specifically incorporate by this reference its Response to Plaintiff's Brief in Support of His Right to Conduct Discovery re: Conflict of Interest, filed March 16, 2006 at Docket No. 23.

Plans.  The SPD also states:

> Final Decision
>
> Each claims administrator for the welfare plans or the plan administrator for the Raytheon Savings and Investment Plan, including the Raytheon Stock Ownership Program, has the authority to make final decisions with respect to paying claims.  The plan administrator is responsible for making final decisions with respect to all other issues that may arise under the plans.
>
> **In making a final decision, the applicable claims administrator and the plan administrator have broad discretion in interpreting the meaning of plan provisions and in determining all questions arising under a plan, including, but not limited to, eligibility for benefits**. (Emphasis added).

Under these provisions of the SPD, MetLife has discretionary authority to interpret the provisions of the Plans and to determine eligibility for and entitlement to disability benefits.  This authority is confirmed by specific provisions of the Plans.  "Your Employee Benefit Plan, Raytheon Company, Unified Plan Short Term Disability Benefits" states:

> In carrying out their respective responsibilities under the Plan, the Plan administrator (Raytheon Company) and other Plan fiduciaries, (MetLife) shall have discretionary authority to interpret the terms of the Plan and to determine eligibility for and entitlement to Plan benefits in accordance with the terms of the Plan.  Any interpretation or determination made pursuant to such discretionary authority shall be given full force and effect unless it can be shown that the interpretation or determination was arbitrary and capricious.

the Raytheon Company Long Term Disability Plan contains the following terms:

> 2.5    <u>Claims Administrator</u> means the Metropolitan Life Insurance Company or other entity or individual designated by the Plan Administrator to administer claims filed under this Plan.
>
> 7.1    <u>Designation of Plan Administrator</u>.  The general administration of the Plan shall be the responsibility of the Company.  The Company shall be the Plan Administrator and named

- 3 -

fiduciary for purposes of ERISA. The Plan Administrator and, **with respect to claims administration, the Claims Administrator, shall have the exclusive right, in their sole discretion, to interpret the Plan, make factual determinations and decide all matters arising thereunder, including the fight to remedy possible ambiguities, inconsistencies, or omissions. All determinations of the Plan Administrator and Claims Administrator with respect to any matter within their assigned responsibilities hereunder shall be conclusive and binding on all persons unless it can be shown that the interpretation or determination was arbitrary and capricious.** (Emphasis added).

7.3    Duties of Claims Administrator.  Determination of all claims for Benefits and questions which may arise under the Plan with respect to the payment of Benefits shall be made by the Claims Administrator in accordance with the provisions of the Plan and consistent with the Claims Administrator's fiduciary obligations. The Claims Administrator shall provide a full and fair review of any claim that is denied, in whole or in part. All decisions regarding claims for Benefits under the Plan shall be based on evidence satisfactory to the Claims Administrator. **The decisions of the Claims Administrator shall be conclusive and binding on all persons, unless a court of competent jurisdiction determines that such decision was arbitrary or capricious**. (Emphasis added).

8.5    Authority of Claims Administrator.    The Claims Administrator is the named fiduciary to whom the Plan grants full discretion, to interpret the Plan with respect to claims for Benefits; to determine whether a claimant is eligible for Benefits; and to resolve any other matter related to claims under the Plan (including appeals of denied claims), which is raised by a claimant or identified by the Claims Administrator. All questions arising from or in connection with the provisions of the Plan and its administration, not herein provided to he determined by the Plan Administrator, shall be determined by the Claims Administrator, and any determination so made shall be conclusive and binding upon all persons. The Claims Administrator may designate one or more of its members or any other person of its choosing to make any determination required to be made by the Claims Administrator under this ARTICLE.

Plaintiff agrees that the Plans grant discretion to MetLife to determine eligibility for and entitlement to benefits.  *See* Order, p. 2.[3]

---

[3] *See also,* Order dated January 27, 2006, in *Griffin v. Raytheon Long Term Disability Plan No. 558 and Metropolitan Life Ins. Co.*, No. 3:04-CV-2179-D (N.D. Tex.), attached as Exhibit 8.

On or around September 9, 2004, Plaintiff stopped working due to complaints relating to coronary artery disease and his status post coronary bypass grafting surgery two years earlier. Plaintiff submitted his claim for short-term disability benefits the next day. Plaintiff's family practice physician, Dr. Barnett, attested to the alleged disability. MetLife investigated the claim and reviewed submitted medical information and documentation. On September 13, MetLife placed calls to Plaintiff and his supervisor, Bill Berry, to discuss the claim, his job duties and claimed disability from working.

MetLife submitted Plaintiff's file to an independent physician consultant, Amy Hopkins, M.D., M.P.H., Ph.D., who is board certified in both Internal Medicine and Occupational Medicine. Dr. Hopkins evaluated all the medical information and records regarding Plaintiff's condition. She found no medical evidence of any active cardiac disease. She also noted that Plaintiff claimed impairment from stress at work but there was no indication of what at work was causing stress in Plaintiff's sedentary occupation. Dr. Hopkins specifically contacted and discussed Plaintiff's condition with his treating physician, Dr. Barnett. *See* Physician Consultant Review by Dr. Hopkins, dated October 4, 2004, attached as Exhibit 2. Dr. Hopkins submitted the results of her review to MetLife. In her report, she concluded a) that there was no information about what was causing Wright his alleged debilitating stress, b) there was not treatment or a treatment plan for stress management, and c) "there is no objective evidence in this file of any significant physical impairment." Exhibit 2, p. 2.

After completing its review, MetLife informed Plaintiff that his claim for STD benefits was being denied. The letter stated that there was no information relating to any recent cardiology notes or stress testing to indicate any active condition. There was no evidence of any stress management treatment, program, or medication. The information,

MetLife determined, did not support the existence of a condition that would render Plaintiff totally disabled from performing his regular job functions as a Senior Industrial Security Specialist as of September 10, 2004. The letter described the process whereby Plaintiff could request an appeal and review of the claim. *See* Letter, dated October 13, 2004, attached as Exhibit 3. The short term disability benefits total less than $20,000.00.

Wright submitted an appeal on October 20. Plaintiff's attorney filed a new appeal on November 12, and submitted a "formal appeal" on April 5, 2005. MetLife reviewed all the information and documentation submitted by the Plaintiff on appeal. MetLife submitted Plaintiff's file to a different independent physician consultant for another physician file review. This time, the information was submitted to Michael J. Rosenberg, M.D., who is board certified in Internal Medicine, Cardiology and Interventional Cardiology. Dr. Rosenberg reviewed the Plaintiff's medical records and other documentation. He also spoke with Plaintiff's treating family physician, Dr. Barnett and his cardiologist Dr. Citron. Dr. Rosenberg and Dr. Citron agreed that Plaintiff had "near-normal left ventricular function, no evidence of myocardial ischemia, and indications are stable from a cardiologist standpoint" and that from a cardiovascular perspective, on the basis of the available medical information, Plaintiff could not be stated to be totally unable to work. *See* Report of Dr. Rosenberg, dated June 14, 2005, attached as Exhibit 4, p. 3. Dr. Rosenberg's overall conclusion was that there were no significant functional limitations that would support Plaintiff's inability to perform his sedentary job duties. MetLife sent this report to both of Plaintiff's treating physicians for comment. *See* June 23, 2005 letters attached as Exhibit 5. No response to the report of Dr. Rosenberg was ever submitted by either Dr. Barnett or Dr. Citron.

MetLife upheld the denial of Plaintiff's claim as the medical information provided

did not support the finding of a total disability as defined by the terms of the Plan. MetLife communicated the decision to Plaintiff in writing and stated the reasons for the claim determination. *See* Letter, dated June 30, 2005, attached as Exhibit 6.

### B. ERISA LIMITS REVIEW TO THE ADMINISTRATIVE RECORD.

Under ERISA, review is limited to the Administrative Record whether the standard of review is de novo or abuse of discretion. *Kearney v. Standard Ins. Co.,* 175 F.3d 1084, 1090 (9th Cir. 1999). The reasoning behind this rule is the public interest in encouraging the formation of employee benefit plans and also the need for prompt and fair claims settlement procedures. *Id.* (citing *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 54 (1987)). ERISA "adopts a policy to increase the likelihood that beneficiaries will receive their full benefits and to maintain the premium costs of such systems at a reasonable level." *Id.* at 1094. It is well established that a "full trial" with evidence that was not before the administrator "would undermine these policies." *Kearney,* 175 F. 3d at 1094. ERISA claims are a "trial on the administrative record" to meet the goals of "keeping costs and premiums down, and minimizing diversion of benefit money to litigation expense." *Id.* "This is vastly less expensive to all parties [and] accomplishes the policies enacted as part of the statute." *Id.* Since this is an ERISA matter, judicial review should be limited to the record that was before MetLife when it made its decision. No discovery is permitted in accordance with the public policy underlying ERISA.

### II. SPECIFIC OBJECTIONS TO THE ORDER

By her Order, Magistrate Guerin allowed Plaintiff "to conduct limited discovery related to the independence or neutrality of the physicians utilized by MetLife in Plaintiff's case." *See* Order, p. 5.[4] The Order is based upon a fundamentally incorrect

---

[4] It must be noted that Plaintiff apparently has no intention of seeking limited discovery. At the Scheduling Conference on April 27, 2006, Plaintiff stated that he expected Responses to all the numerous proposed discovery requests [which were never properly

- 7 -

premise that Plaintiff had shown a potential conflict of interest which, if proven, would require a *de novo* rather than an abuse of discretion standard of review. *Id.* The Objections illustrate the factual and legal fallacies in that premise and thereby the Order.

### 1. There Is No Conflict Of Interest Under The LTD Plan.

MetLife is the claims administrator of the LTD Plan but MetLife is not the funding source for Plan benefits. The LTD Plan is funded by the Raytheon Employees Disability Trust, which is established through employee contributions. This was acknowledged in the Order (*See* Order, p.1, n.1) and has not been disputed by the Plaintiff. Thus, the entire analysis set forth in the Order based on the Plaintiff's assertion of an apparent conflict allegedly based on MetLife serving a dual role as administrator and funding source is inapplicable with regard to the LTD Plan. The Order is thus factually incorrect in its analysis as it pertains to the LTD Plan.

The fact that there is no conflict for the LTD Plan, as a non-insured plan, has already been found by another District Court. *See* Order, dated July 8, 2004, in *Gray v. Raytheon Company; Raytheon Company Long Term Disability Plan and Metropolitan Life Ins. Co.*, No. C03-5604 (W.D. Wash.) (No apparent conflict exists with respect to the LTD Plan because MetLife does not pay benefits under the Raytheon LTD Plan), attached as Exhibit 7. *See also*, *Griffin v. Raytheon Long Term Disability Plan*, supra, attached as Exhibit 8. Therefore, to the extent it allowed discovery with respect to the LTD Plan, the Order is erroneous and must be vacated.

### 2. There Is No Actual Conflict Of Interest By The Use of Independent Physician Consultants.

---

served on Defendants] which he attached to his original Brief In Support of His Right to Conduct Discovery, irrespective of whether they pertain to the independence or neutrality of the physicians or other matters. The Order fails to state precisely which of these "illustrative" requests were erroneously deemed permissible limited discovery.

- 8 -

The Order asserts as its basis for allowing discovery that the Plaintiff has alleged a conflict of interest by claiming the record, as a whole, illustrates that MetLife acted as an adversary bent on denying Plaintiff's claim and oblivious to its fiduciary obligations. The only alleged basis for this alleged conflict is that MetLife utilizes certain third party vendors employing physicians to conduct medical reviews and that the actions of the physicians were somehow conflicted or improper.

The law is clear that use of third party physicians to review medical records is not improper. In a case involving the Raytheon LTD Plan, the First Circuit stated:

> In the plaintiff's view, the ostensible conflict involves MetLife's hiring of outside physicians to scrutinize the plaintiff's medical records. To affect the standard of review, however, a conflict of interest must be real. A chimerical, imagined, or conjectural conflict will not strip the fiduciary's determination of the deference that otherwise would be due. The conflict that the plaintiff envisions does not pass through this screen. Analyzing disability claims plainly requires expertise. It is, therefore, difficult to fault a plan administrator for seeking expert assistance (indeed, it probably would be easier to fault a plan administrator for *not* seeking such assistance). We are aware of no case holding that a plan administrator operates under a conflict of interest simply by securing independent medical advice to aid in the evaluation process. Nor do we view this as an accident: common sense dictates that retaining outside physicians to assist in evaluating disability claims, without more, does not constitute a conflict of interest. (Citations and footnote omitted).

*Leahy v. Raytheon Company*, 315 F.3d 11, 16 (1st Cir. 2002).

MetLife is the second largest provider of group disability insurance in the United States and provides disability coverage to 3.5 million employees. Due to the large number of claims MetLife handles, it must have independent vendors that it can submit medical records to for a medical review. Courts have recognized that MetLife utilizes reputable and independent vendors to obtain its medical consultations. *See Sweatman v.*

- 9 -

*Commercial Union Ins. Co.*, 39 F.3d 594, 601, n.14 (5th Cir. 1994)(recognizes independence of MetLife vendor –Underwriting Medical Actuarial Consultants, Inc.); *Durr v. Metropolitan Life Insurance Company,* 15 F. Supp.2d 205, 208 (D. C. Conn. 1998)(Network Medical Review "NMR" is an independent medical consulting firm not affiliated with MetLife).

### 3. The Number of Times A Particular Medical Consultant Is Used Does Not Constitute An Actual Conflict For The Claim Administrator.

The Order seeks to use as a factual basis for allowing discovery, the number of times that particular medical consultants have reviewed files for MetLife. *See* Order, p. 4, ll. 17-22. This is not a valid basis for establishing a conflict of interest that would affect the standard of review, thus it provides no basis for the allowance of discovery.

First, the Ninth Circuit does not recognize the multiple use of a consultant physician as evidence of a serious conflict. Moreover, the use of established medical consultant firms is simply not problematic. MetLife handles tens of thousands of disability claims every year. In making its claim determinations, MetLife is bound by the rules and regulations governing claims procedure in the Code of Federal Regulations. *See* 29 CFR § 2560.503-1. The regulations require that claims and appeals be determined within set time periods and that in deciding an appeal of an adverse benefit determination based on a medical judgment, the plan fiduciary deciding the claim must consult with a health care professional. *See* 29 CFR § 2560.503-1(f)(3), (h)(3)(iii), (h)(4), & (i)(3)(i). To comply with the Federal Regulations, MetLife must have vendors it can submit medical records to for a timely review. *See Leahy v. Raytheon Co.*, 315 F.3d 11, 16 (1st Cir. 2002).

Such a practice has been found to be proper and not a serious conflict which would allow discovery or change the standard of review in an ERISA matter.

- 10 -

> Sweatman argues that because Drs. Blendonhy and Dwyer review, twenty to thirty files per month for UMAC, they are "financially dependent upon UMAC [which, Sweatman argues, is in turn financially dependent on MetLife] and … by no means 'independent'" or 'impartial.' "This argument lacks merit. First, UMAC's doctors are independent consultants because MetLife hires UMAC on a contractual basis. Second, even assuming the issue were relevant, Sweatman points to no evidence in the record that proves Drs. Dwyer and Blendonhy are "financially dependent" on UMAC or that UMAC depends on MetLife. The number of files they review per month proves nothing about their financial status. Finally, we note that the only way for MetLife to satisfy Sweatman's standard for impartiality would be to seek physicians willing to volunteer their time to review the medical files of disability claimants.

*Sweatman*, 39 F.3d at 601, n.14. Thus, the fact that Drs. Hopkins and Rosenberg are affiliated with NMR, which is an independent medical consultant vendor of MetLife, *Durr v. Metropolitan Life Ins. Co, supra,* and review files frequently, does not constitute a serious conflict which can allow discovery.

### 4. Independent Physician Consultants Have No Impermissible Incentive To Deny Claims That Amount To A Serious Conflict Of Interest.

The arguments by Plaintiff asserting his right to discovery and the Order both reflect a flawed premise that MetLife's independent physician consultants have an inherently impermissible incentive to deny claims to the detriment of claimants. It appears that this premise derives from the number of claims reviewed by the consultants and the mistaken impression that insurer retained consultants have an inherent bias. Both of these factual predicates are wrong. As demonstrated above, the fact that medical consultants may review many claims in a year does not negate the presumption of independence. It is a practical necessity that independent medical review companies exist and help insurers process and review claims. Moreover, as the Supreme Court recognized, independent consultants have no more inherent bias than treating physicians.

"[I]f a consultant engaged by a Plan may have an 'incentive' to make a finding of 'not disabled,' so a treating physician, in a close case, may favor a finding of 'disabled.'" *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 832 (2003); *see also, Mobley v. Continental Cas. Co.,* 405 F.Supp.2d 42 (D.C.D.C. 2005)(noting that a treating physician may also have a bias to support plaintiff, and recognizing that each physician may tend to favor the party with whom they are associated).

Requests, similar to Plaintiff's, where a participant has sought the number of cases in which physician consultants had given an opinion of disability to support Plaintiff's claim of bias have been rejected. Judge Thornburg, of the Western District of North Carolina, just one month ago, denied the requested discovery stating simple logic:

> Plaintiff apparently believes that if a physician has issued a greater number of opinions finding "no disability" than "disability," such is evidence of bias. Her belief is false. The numbers alone tell the Court little to nothing about whether a particular physician is biased, regardless of how one-sided the numbers might be. Without a Court digging into every case, examining the other opinions and medical evidence presented, there is simply no way to determine whether a particular physician's opinion in a particular case was or was not proper. And without knowing whether such opinion was proper, the numbers are irrelevant. For example, that a physician *properly* found 95 out of 100 persons "not disabled" does not make the physician biased, despite the connotation of a 95 percent "no disability" moniker. Without expanding every case exponentially, the Court simply has no way to judge the veracity or relevancy of the information sought by Plaintiff.

*See* Order of March 31, 2006, in *Shepherd v. Metropolitan Life Ins. Co,* Cause Number 1:04 CV136, attached as Exhibit 9.

    **5.**    **Discovery Of The Type Permitted By The Order Would Improperly Expand ERISA Cases.**

The Order is improper and must be vacated because it allows discovery that does

- 12 -

not go to the only relevant point, namely a serious conflict by the actual decision maker. Discovery seeking to establish the possibility of a conflict by a third party physician consultant is irrelevant to the appropriate inquiry in an ERISA case. The issue is whether the party making the claim determination, in this case MetLife, acted under a serious conflict of interest that directly affected the claim decision. The discovery permitted by the Order – to determine the neutrality and independence of the physicians utilized by MetLife in Plaintiff's claim – is meaningless because the physician consultants did not make the claim determination. Thus the discovery should not be allowed.

MetLife is the claim administrator under the Plans and made the decision to deny Plaintiff his STD benefits. The physician consultants simply provided opinions to MetLife to assist in the investigation and claim review process. To assert that any alleged conflict by a physician consultant amounted to a serious conflict of interest directly affecting the claim decision overstates the role of the consultant. *Sweatman,* 39 F.3d at 599, n. 7.

In a another matter where discovery was sought regarding the number of cases handled by a physician consultant and the amount he had been paid for his work, the discovery was denied because it is not the physician consultant's decision that is subject to Court review, it is only the claim fiduciary making the claim decision that is the relevant party. *See Abromitis v. Continental Cas. Co./CNA Insurance Companies*, 261 F. Supp.2d 388, 390 (W.D.N.C. 2003), *aff'd* 114 Fed. Appx. 57 (4th Cir. 2004); *see also MacLachlan v. ExxonMobil Corp*, 350 F.3d 472, 479-80 (5th Cir. 2003) (ExxonMobil's benefit counsel advised the plan administrator, but the decision and interpretation was that of the plan administrator)

Moreover, if discovery in an ERISA case were allowed on every person or entity

that might have some conflict or information the scope of ERISA reviews would be blown way out of the limited review that ERISA envisions and upon which it is based.

> If this position were the law, then every ERISA case involving an administrator who is also the Plan funding source would involve far-reaching, open-ended, nearly limitless discovery. Plaintiff would depose reviewers, consulting physicians, and corporate officers of plan administrators. They could inspect claims manuals and other documents describing the claims review process, and personnel files, employee evaluations, and other documents tending to show that employees of the administrator were pressured or rewarded for denying claims. Then, following this discovery, the issue of the decision maker's motivation would be extensively litigated, perhaps involving days or weeks of testimony. The expense of ERISA litigation could easily be more than the benefits at issue.

*Newman v. Standard Ins. Co.*, 997 F. Supp. 1276, 1280-81 (C.D.Cal. 1998); *see also Abromitis,* at 391 ("the Court notes that because the evidence the Plaintiff seeks to discover pertains to the conflict of interest of a vocational consultant hired by Defendant, permitting discovery requests such as this one would increase both the time and expense involved in reviewing ERISA benefits decisions."); *Shepherd v. MetLife, supra,* at 18-20. That is especially relevant in this matter where the STD benefits (which are the only ones funded by MetLife as opposed to another funding source) are less than $20,000 – hardly an amount that would cause a serious conflict of interest, and less than the cost of the burdensome discovery Plaintiff seeks here.

**6.  There Is No Evidence That There Was Anything Improper In The Opinions Sought By MetLife From The Consultant Physicians.**

Another alleged factual basis for allowing discovery is because of "carefully crafted questions posed to the reviewing physicians in order to guide their opinions…." *See* Order, p. 4, ll.22-23.  The exact argument has been rejected in *Sweatman v. Commercial Union Ins. Co., supra.* In that case, the Plaintiff argued that the questions

- 14 -

asked of the physician consultants showed an abuse of discretion by MetLife. The Court disagreed.

> The remainder of Sweatman's arguments simply overstate UMAC's role in MetLife's disability determination. Sweatman argues that MetLife abused its discretion because Drs. Blendonhy and Dwyer were not asked whether Sweatman was "totally disabled" but rather only whether her medical records supported the physical limitations she claimed. … Both of these arguments are beside the point because MetLife, and not Drs. Dwyer and Blendonhy, was responsible for the ultimate determination of whether Sweatman was "totally disabled." MetLife only consulted the UMAC physicians only on the question of whether Sweatman's own records supported the physical limitations she claimed.

*Id.,* 39 F.3d at 603. Similarly, in this case, MetLife asked Drs. Hopkins and Rosenberg to evaluate Mr. Wright's physical limitations and impairments. This is not a conflict of interest or improper conduct. *Id.* In fact, such a review is required under the regulations.

**7.    There Is No Legitimate Evidence Of Misconduct Based On Dr. Barrett's Letter.**

Finally, the Order refers to a letter from Plaintiff's physician, Dr. Barrett, as evidence of a potential conflict. Order at p.4 l.28 – p. 5 l.5. This is misleading and legally irrelevant. First, Dr. Barrett's letter does not state that the physician consultant misrepresented statements made by Dr. Barrett but instead that he believes MetLife may have misconstrued the notation of the statements by the consultant. He is referring to a letter from Ms. Kinney where he feels she has misrepresented facts with regard to his discussion with Dr. Hopkins. Dr. Barrett does not deny his discussions with Dr. Hopkins or Dr. Hopkins' report's reflection of those discussions.

More importantly, this issue goes to Dr. Hopkins' report. This is with regard to the initial denial. After Plaintiff appealed the denial, the matter was submitted to Dr.

- 15 -

Rosenberg. Thus, the dispute set forth in Dr. Barrett's letter is irrelevant to the final decision on appeal. Additionally, both Dr. Barrett and Dr. Citron were provided copies of Dr. Rosenberg's report and did not respond to requests by MetLife for comments or critiques of his findings. In the situation where the Plaintiff's physicians fail to respond to such inquiries, any evidence of a conflict or claimant's disability is undermined. *See Nord v. Black & Decker Disability Company,* 356 F.3d 1008 (9th Cir. 2004); *Jordan v. Northrop Grumman Corp. Welfare Benefit Plan,* 370 F.3d 869, 877-878 (9th Cir. 2004).

This also negates the allegations relied on by the Magistrate with regard to Dr. Rosenberg only reviewing the matter from a cardiac perspective and allegedly altering or misquoting Plaintiff's medical records. *See* Order, p. 4, ll. 24-28. These are mere unsupported allegations by the Plaintiff and are undermined by the failure of his physicians to respond to the report of Dr. Rosenberg provided to them by MetLife. *See* Exhibit 5.[5]

**8.     The Magistrate Incorrectly Assumed Discovery Should Be Allowed.**

The Magistrate refers to *Medford v. Metropolitan Life Ins.,* 244 F. Supp.2d 1120 (D.Nev. 2003),[6] and *Frost v. Metropolitan Life Ins. Co.,* 414 F.Supp.2d 961 (C.D.Cal. 2006), for the proposition that District Courts should allow discovery in ERISA cases to

---

[5] Further to the extent the Plaintiff's allegations and the Order implies that Dr. Rosenberg never considered the pulmonary aspects of Plaintiff's condition that is again factually incorrect. As part of his record review, Dr. Rosenberg analyzed and considered the report of Dr. Scott Bronnimann, Plaintiff's pulmonary doctor. Dr. Rosenberg's analysis of these pulmonary records is contained in his report of June 14, 2005 and speaks for itself, despite Plaintiff's desire to argue with the analysis and mischaracterize Dr. Rosenberg's conduct. *See* Exhibit 4, at p. 2.

[6] It should be noted that the *Medford* Court relied in large part on the decision in *Regula* and allegations pertaining to the "treating physician rule" which have now been overruled.

permit plaintiffs to look for material, probative evidence of a conflict of interest causing a breach of fiduciary obligations. However, that stretches those cases to establish a rule that is not supportable.

Another Judge in the District of Arizona has stated that merely alleging a conflict of interest and showing an apparent conflict does not allow a party to conduct discovery to see if material probative evidence of an actual and serious conflict affecting the decision can be found. As Judge Campbell stated: "[D]iscovery should not be permitted merely because a plan administrator is also the funding source for the plan. To hold otherwise would be to permit discovery in the majority of ERISA cases. The Court agrees with the decision in *Newman* that making such discovery commonplace would defeat a fundamental purpose of ERISA."[7]

Similarly, Judge McNamee of the District of Arizona has recently stated that the existence of conflicting physician testimony and opinion is not novel or unique in a disability matter and acceptance of one medical opinion over another does not constitute or show a serious conflict of interest affecting the standard of review. *Sotak v. Highmark Life Ins. Co.,* 2006 WL 798868 (D. Ariz. March 28, 2006). *Accord, Black & Decker v. Nord*, *supra*. If such evidence does not affect the standard of review, then there is no reason to allow discovery to search for it.

### III. CONCLUSION

For the foregoing reasons, the Magistrate's Order of April 19, 2006, allowing Plaintiff to conduct discovery in this matter is contrary to the law governing ERISA matters and the public policy underlying ERISA. It should, therefore, be reversed.

---

[7] *See* Order dated July 15, 2005, in Wilcox v. Metropolitan Life Ins. Co., No. CV-04-926-PHX-DGC, attached as part of Exhibit 10, at pp. 2-3.

RESPECTFULLY SUBMITTED this 2nd day of May, 2006.

**KUNZ PLITT HYLAND DEMLONG & KLEIFIELD**
A Professional Corporation

By      s/Timothy R. Hyland
      Timothy R. Hyland
      Dominic L. Verstegen
      3838 North Central Avenue, Suite 1500
      Phoenix, Arizona  85012-1902
      Attorneys for Defendants

ORIGINAL of the foregoing electronically filed this 2nd day May, 2006, with:

Clerk, United States District Court
District of Arizona
405 W. Congress St., Ste. 3160
Tucson, AZ  85701-5033

COPY of the foregoing electronically served this 2nd day of May, 2006:

Barry Kirschner
Waterfall, Economidis, Caldwell,
Hanshaw & Villamana, P.C.
5210 E. Williams Circle, Ste. 800
Tucson, AZ  85711
Attorneys for Plaintiff

And a COPY mailed this same date to:

The Honorable Cindy K. Jorgenson
United States District Court
District of Arizona
405 W. Congress St., Ste. 3160
Tucson, AZ  85701-5033

The Honorable Jennifer C. Guerin
United States District Court
District of Arizona
405 W. Congress St., Ste. 3180
Tucson, AZ  85701-5031

s/Alice Murphy

- 18 -