1

2

WATERFALL, ECONOMIDIS,
   CALDWELL, HANSHAW & VILLAMANA, P.C.
5210 E. Williams Circle, #800
Tucson, AZ  85711
(520) 745-7810
bkirschner@wechv.com

3

4

5

Barry Kirschner/PCC31284/SBN 005592
Attorneys for Plaintiff

6                    IN THE UNITED STATES DISTRICT COURT

7

8                      FOR THE DISTRICT OF ARIZONA

ALAN WRIGHT,                          No.:  05cv604 TUC CKJ (JCG)
        Plaintiff,

9

10   v.                                **PLAINTIFF'S RESPONSE TO
                                       DEFENDANTS' OBJECTIONS TO
                                       MAGISTRATE'S ORDER DATED
11   RAYTHEON COMPANY SHORT            APRIL 19, 2006**
     TERM DISABILITY PLAN,
12   RAYTHEON COMPANY LONG
     TERM DISABILITY PLAN, and
13   METROPOLITAN LIFE
     INSURANCE COMPANY,
14        Defendants.

15         Defendants' Objection to the findings and Order of the Honorable Jennifer Guerin,

16   United States Magistrate should be overruled for reasons including those set forth below

17   and advanced in the initial pleadings before Magistrate Guerin and the Magistrate's Order.

18   **I.      BACKGROUND**

19         Plaintiff Alan Wright ("Wright") was ordered to cease work by his treating

20   physician Dr. Bradley Barnett in September 2004.    Wright exhausted all remedies to

21   receive short and long term disability and filed this litigation October 12, 2005.  After

22   receiving the Joint Scheduling Report from the parties, the Honorable Jennifer Guerin,

23   United States Magistrate established a briefing schedule to determine whether Plaintiff

24   could conduct discovery on the issues of conflict of interest and standard of review, or

25   whether to accept Defendants' position that no discovery should be allowed.

26         The Magistrate's Order was issued April 13, setting a scheduling conference for

1    April 27, 2006.  At that conference Defendants made it clear that they did not consider any

2    specific discovery to have been within the scope of the Order, would resist by Objecting

3    to the Order, and that even if the Order were affirmed they could be expected to resist each

4    requested item individually when they feel the formal need to do so.  Further resistance and

5    delay are expected.  *See* Exhibit 1, May 11, 2006 letter from Timothy Hyland to Barry

6    Kirschner.

7    **II.    STANDARD OF REVIEW**

8          The Order of the Magistrate should only be set aside if found to be clearly

9    erroneous.  FRCP 72(a).

10   **III.    THE ORDER OF MAGISTRATE GUERIN IS REASONABLE AND SHOULD BE CONFIRMED**

11

12        **A.    Wright seeks application of the FRCP to his civil action.**

13        The scope of the Order being reviewed confirms the long established Federal Rules

     of Civil Procedure ("FRCP").  The FRCP applies to all civil actions.  Discovery including

14   the quest for admissible evidence or information which can reasonably lead to admissible

15   evidence is relevant. *See* FRCP 1, 2, and 26(b).  The appropriate standard of review in

16   *Wright* is at issue.  Wright's pleadings, as noted in the Order of Magistrate Guerin, allege

17   a conflict of interest on Defendants which would have the affect of changing the standard

18   of review on its decision to *de novo*.  Defendants claim that their fiduciary status entitles

19   all of their decisions to great deference from the court.  Discovery to assist in correctly

20   deciding the contested issue of conflict of interest and what standard of review of the

21

22   administrative records, including exhibits 3-5 to Wright's Brief for discovery, is

23   appropriate.

24        **B.    Defendants' arguments below**

25        Defendants argued before the Magistrate that ERISA restricts judicial review to the

26   Administrative Record ("AR") and that, since MetLife did not have a serious conflict of

WATERFALL, ECONOMIDIS
5210 E WILLIAMS CIR #800
TUCSON, AZ 85711
520-745-7810

BK/gg/5/16/06
Resp Defs Obj Magistrate Order FNL.wpd                2

1    interest, no discovery is allowed.  MetLife defended its right to use outside medical

2    consultants and suggested that any questions regarding their bias, history of performance,

3    how they were selected, what criteria were used to retain them, and everything else were

4    not proper subjects for discovery.

5    **IV.   MAGISTRATE GUERIN'S ORDER FOLLOWED WELL ESTABLISHED**
     **PRINCIPLES FROM THE UNITED STATES COURT OF APPEALS FOR**
6    **THE NINTH CIRCUIT**

7            Magistrate Guerin's Order finds that MetLife's dual role as insurer and

8    administrator of the Short Term Disability ("STD") Plan, the insurance company has an

9    apparent conflict of interest.  *Lang v. Long Term Disability Plan of Sponsor Applied*

10   *Remote Tech/ Inc.*, 125 F.3d 794, 797-98 (9th Cir.)  The existence of a conflict of interest

11   can affect the degree of judicial deference.  *Firestone Tire & Rubber Co. v. Bruch*., 489

12   U.S. 101. 115 (1989).  Wright clearly alleged conflict of interest in his Complaint.  *E.g.,*

13   *see* Complaint paragraphs 12-32.

14           Proof of the conflict of interest is shown where the beneficiary produces ". . .

15   material, probative evidence beyond the apparent conflict tending to show that the

16   fiduciary's self interest caused a breach of its fiduciary obligations to the beneficiary."

17   *Atwood v. Newmont Gold Co., Inc.*, 45 F.3d 1317, 1323 (9th Cir. 1995).  Following the

18   Federal Rules of Civil Procedure and the holdings of sister districts within the Ninth

19   Circuit, the Order concluded that discovery is appropriate if relevant to Plaintiff's

20   allegation that an actual conflict of interest influenced the Plan Administrator to deny

21   benefits.  *See* Order at Page 3, lines 25-27.

22           Magistrate Guerin considered the Complaint to have properly alleged the conflict,

23   sufficient to allow discovery:

24           Plaintiff claims that the doctors relied on by Defendants receive 400-500
             "independent" assignments from Defendants each year, that Defendants
25           carefully crafted the questions posed to the reviewing physicians in order to
             guide their opinions, and that Defendants ignored factual and logical errors
26           in the reviewing physicians' reports in order to justify termination of

WATERFALL, ECONOMIDIS
5210 E WILLIAMS CIR #800
TUCSON, AZ 85711
520-745-7810

BK/gg/5/16/06
Resp Defs Obj Magistrate Order FNL.wpd                                         3

benefits. (Id.) Plaintiff also claims that in his particular case one of the doctors retained by Defendants altered language from Plaintiff's treating physician's records, and considered his health from a cardiac perspective only, despite medical evidence that Plaintiff also suffered from pulmonary disabilities and mental health issues. (Id.) Plaintiff's allegations are supported by citation to the administrative record, including a letter from his treating physician to Defendants, in which his treating physician states that a physician retained by Defendants misrepresented the treating physician's comments to her regarding Plaintiff's position and "seemed to have a pre-conceived notion that stress was why the patient was out of work." (Plaintiff's Brief, 5 Exh. 1.) These allegations, if proven, could amount to evidence of an actual conflict of interest on the part of Defendants such that their denial of benefits should be reviewed de novo. *Frost.*

Order at page 4 line 17 through page 5 line 7.

## V.   PLAINTIFF'S MOTION AND PROPOSED DISCOVERY

Wright's four page Brief with exhibits in support of his right to request discovery triggered a 17 page Response with largely the same arguments now offered to overturn Magistrate Guerin's ruling. Plaintiff's Brief contained exhibits of discovery which Wright has since served upon Defendants.

Wright's Complaint lists multiple reasons why a finder of fact could conclude that the inherent conflict of interest of an insurance company ruling against a beneficiary to save money may have risen to the bias standard in this case. Medical reviews were conducted by persons who are, or who are affiliated with, a big business of providing reports to MetLife and similarly situated insurance companies. If this could not contribute to a finding of bias, the United States Supreme Court would hardly have stated, "Nor do we question the Court of Appeals' concern that physicians repeatedly retained by benefit plans may have an incentive to make a finding of not disabled in order to save their employers money and to preserve their own consulting arrangements." 538 U.S. 822, 832 (2003).

All discovery proposed by Wright is calculated to accumulate or lead to admissible evidence. For instance:

1.      Plaintiff's Request to Produce no. 3, "All guidelines in effect at MetLife any

WATERFALL, ECONOMIDIS
5210 E WILLIAMS CIR #800
TUCSON, AZ 85711
520-745-7810

BK/gg/5/16/06
Resp Defs Obj Magistrate Order FNL.wpd

4

1   time since January 1, 2000 for the selection of 'independent reviewers' of medical files for

2   ERISA disability cases."

3       2.      Plaintiff's Non-Uniform Interrogatory no. 2,  "Has any case in which Dr.

4   Amy Hopkins and/or Dr. Michael J. Rosenberg reviewed files for Metlife been determined

5   by a court to have been part of a conflict of interest resulting in a de novo standard of

6   review?"

7       3.      Plaintiff's Request to Produce no. 4, "All analyses, including any

8   mathematical or statistical calculation, of the work performed by Dr. Amy Hopkins, Dr.

9   Michael J. Rosenberg, Elite Physicians Ltd; Network Medical Review; or Sandpiper, LLC

10  for MetLife."

11      Wright Requested Admission no.5,  "No medical doctor considered pulmonary

12  disability as a factor in arriving at a conclusion that Wright was not disabled."  A review

13  of the administrative record ("AR") shows that the statement is clearly true and that

14  MetLife should admit it.  This would save Plaintiff and the Court significant time and

15  resources.  If MetLife can deny it in good conscience, there is nothing wrong with MetLife

16  being required to explain where in the AR any doctor considered whether Wright suffered

17  from a disabling combination of pulmonary illness, sternal non-union, and cardiac disease.

18      Wright's evidence showed that his doctors had conducted studies and concluded

19  that he was disabled from a combination of disease including non-sternal union and

20  restrictive and obstructive airway diseases. Request to Admit 11 states: "MetLife did not

21  make an assessment of whether the total combination of Wright's impairments, including

22  obstructive airway disease and restrictive airway disease, met the Plan definition of

23  disability. Admit _____ Deny _____." An "admit" to this question establishes that

24  Defendant breached its duty to ". . .make a reasoned assessment of whether the total

25  combination of a claimant's impairments justify a disability finding, even if no single

26  impairment standing alone would warrant the conclusions." *Nickola v. CNA Group Life*

WATERFALL, ECONOMIDIS
5210 E WILLIAMS CIR #800
TUCSON, AZ 85711
520-745-7810

BK/gg/5/16/06
Resp Defs Obj Magistrate Order FNL.wpd                    5

1    *Assurance, Co.*, 2005 WL 1910905 (N.D. Ill.); citing (at page 9 and footnote 8) to *Austin*

2    *v. Continental Cas Co.*, 216 F. Supp 2d 550, 558 (W.D.N.C. 2002).  If Defendant denies

3    this Request and answers the related interrogatory asking for an explanation of its

4    justification for the denial, litigants and the Court will have the opportunity to look at the

5    AR page where this was considered, saving everybody a lot of time.[1]

6           Whether MetLife and its doctors were interested in cherry picking information to

7    support a denial rather than getting to the truth is to be decided by the Court.  Discovery

8    can be an important part of assisting the Court in its truth finding function.  Defendants

9    argue that the Court and its beneficiary should be denied access to any information which

10   might reveal a system infected with bias.

11          The AR contains an October 18, 2004 letter from treating physician Dr. Bradley

12   Barnett which states,

13          "I am gravely disturbed by your misrepresentation of the facts with regard
            to my discussion with your independent physician consultant and your lack
14          of due diligence in collecting further medical information regarding Mr.
            Wright's health condition.  You indicate in your letter that 'it was concluded
15          that you are out of work primarily due to work related stress.'  I spent over
            30 minutes on the phone with your independent physician consultant
16          explaining that this was definitely not the case.  Indeed, this consultant
            seemed to have had a preconceived notion that stress was why the patient
17          was out of work and that there was no cardiovascular disease contributing."
            Exhibit 2, AR, ML/WRIGHT 0157-58.
18
     Wright produced direct evidence explaining alterations of medical language by MetLife
19
     medical reviewers to de-emphasize the severity of Wright's disabling conditions.  There
20
     is no reason to believe that MetLife cares about the negative effect that bias has on its
21
     beneficiaries.  There is every reason to believe that, far from investigating this bias to
22

23   _____

24   [1]     MetLife's Dr. Rosenberg continually qualified his conclusions with, "Other co-morbidities,
             such as- morbid obesity -restrictive lung disease - Anxiety depression Are separate
25           considerations"; and "From a cardiovascular standpoint" (Exhibit 2, Administrative Record
             (AR) ML/WRIGHT 0446-47 which renumbers AR Met00164 and 165 in tab 2 of Wright's
26           Brief.)

WATERFALL, ECONOMIDIS
5210 E WILLIAMS CIR #800
TUCSON, AZ 85711
520-745-7810

BK/gg/5/16/06
Resp Defs Obj Magistrate Order FNL.wpd                    6

1    prevent it, Metlife promotes it.[2]

2         Wright's treating physician Dr. Bronnimann wrote: "Diffusion is markedly reduced

3    but it does correct for alveolar volume. This indicates that the decrease in diffusion is

4    directly related to the reduced alveolar volume within the thorax."   Exhibit 2, AR,

5    ML/WRIGHT 0431.   Dr. Rosenberg wrote, "The diffusion capacity was reduced but

6    corrected normally for alveolar volume.  (Exhibit 2, AR, ML/WRIGHT 0444 which

7    renumbers AR Met00162 in tab 2 of Wright's Brief.)

8         Medical discovery would establish that Dr.  Bronnimann's use of "diffusion" was

9    to describe physical properties of oxygen that allow it to travel across the alveolar

10   membrane into the bloodstream.  In the language of pulmonology, a capacity is defined as

11   a sum of two lung volumes.  Dr. Bronnimann's opinion is that the decrease in diffusion is

12   directly related to the reduced alveolar volume within the thorax, and illustrates a

13   moderately severe restrictive lung impairment. Dr. Rosenberg's turn of several words with

14   the introduction of "capacity" and "normally" and the deletion of "markedly" and, "This

15   indicates that the decrease in diffusion is directly related to the reduced alveolar volume

16   within the thorax", twists the opinion of Dr. Bronnimann from a very significant problem

17   to gibberish.  Dr. Bronnimann's mentioning that diffusion corrects for alveolar volume

18   means only that there is no scarring in the lungs.  It does not imply, as Dr. Rosenberg

19   suggests, that the diffusion is not significant.

20        MetLife did nothing to question the reason why Dr. Rosenberg would be motivated

21

22   _____

23   [2]      In *Frost v. MetLife*, the parties have now stipulated that, after the court allowed discovery,
     Dr. Amy Hopkins was paid $155,760 (63% of her income) in 2004 by MetLife for file
     reviews, up from $133,995 (57% of her income in 2003).  *See* Exhibit 3, Defendants

24   stipulated facts from *Frost v. Metropolitan Life*.  It appears the going rate paid to reviewing
     Network Medical Review doctors retained by MetLife is $150 per case, an amount which

25   hardly encourages great scholarship when reviewing the substantial medical records of all
     treating health care provides. *See* Exhibit 4, declaration of Robert Porter obtained following

26   the order in *Frost* permitting discovery.

WATERFALL, ECONOMIDIS
5210 E WILLIAMS CIR #800
TUCSON, AZ 85711
520-745-7810

BK/gg/5/16/06
Resp Defs Obj Magistrate Order FNL.wpd                    7

1    to make these changes.  It is clear that Dr. Rosenberg wanted to author a report which

2    would diminish any claim of disability.  If MetLife were acting responsibly to protect its

3    beneficiary instead of its own corporate funds, it would have questioned the twisting done

4    by Rosenberg's report.  If MetLife wants to encourage bias against the claimant, it would

5    refrain from criticizing its <u>less than independent</u> reviewers, and fervently resist discovery

6    in court.  This is what is happening in these pleadings.

7         Dr. Rosenberg's report was disclosed only after the denial of Wright's appeal by

8    MetLife.  Wright has had no opportunity to rebut this commentary by the "independent"

9    reviewer whose opinion was the basis for MetLife's denial.  With a closed AR and (if this

10   Court were to rule) an inability to do discovery, Wright is severely prejudiced.  Economy

11   in litigation is important, but there is no school of law which describes it as trumping the

12   need for seeking truth, and applying the law to facts correctly found.  Magistrate Guerin's

13   Order took these factors into consideration and ruled properly.

14   **VI.    DEFENDANT'S NEW OBJECTIONS FOLLOWING MAGISTRATE**
     **        GUERIN'S ORDER SHOULD ALSO BE REJECTED**

15

16        MetLife now argues incorrectly that, because it is the claims administrator and not

17   the direct funding source for long-term disability plan benefits, there is no conflict of

     interest.  But in its opposition brief filed before the Magistrate, MetLife argued:

18

19        "     This analysis is particularly apt here, where the fully-insured portion
           of the benefits is less than $20,000 - hardly an amount that would cause a
20         serious conflict of interest, and less than the cost of the burdensome
           discovery Plaintiff seeks here."  Defendant's Responsive Brief p. 13 ll. 17-
21         19 below in their argument before the Magistrate.

22   MetLife makes no explanation regarding why there is no conflict of interest argument on

23   the first $20,000 which would apply to its status as a fiduciary with an obligation to protect

24   the rights of a beneficiary like Wright.

25        In its objections to the Magistrate's Order, MetLife argues that outside doctors are

26   necessary to support the obligations of a disability insurer, and therefore discovery

WATERFALL, ECONOMIDIS
5210 E WILLIAMS CIR #800
TUCSON, AZ 85711
520-745-7810

BK/gg/5/16/06
Resp Defs Obj Magistrate Order FNL.wpd

8

1    regarding the relationship between these physicians and the insurance company would not

2    be relevant.  As it did before the Magistrate, MetLife cites unpublished opinions from its

3    vast libraries of pleadings generated as a result of its denials of disability claims.

4    Published orders like *Frost v. Metropolitan Life Ins. Co.*. 414 F.2d 961, 964-65 (C.D. Cal.

5    2006), cited by Magistrate Guerin requiring significant discovery from MetLife in an

6    ERISA case, and unpublished orders such as *Thomas Wright v. MetLife*, exhibit 1 to

7    Wright's February 27, 2000 brief to allow discovery, , MetLife's Supplemental Response

8    to Plaintiff's First Set of Interrogatories, and multiple other discovery orders that MetLife

9    must respond to discovery in ERISA cases are ignored by MetLife pleadings.  Citing

10   several favorable unpublished opinions and effectively hiding the many unpublished

11   opinions against it, is not fair.

12        The bottom line is MetLife wants power without accountability.  It usurps the role

13   of the Court in declaring there is no conflict of interest and therefore no discovery should

14   be allowed on the issue.  Regardless of how and why MetLife hires, retains, or pays its

15   stable of "independent" reviewers, it wants to shield its potential for bias from the type of

16   scrutiny necessary to protect an ERISA beneficiary.

17        Defendants' arguments that it should be shielded from all discovery should be

18   rejected.  Magistrate Guerin's Order is correct should be affirmed.

19        RESPECTFULLY SUBMITTED May 16, 2006.

20              WATERFALL, ECONOMIDIS, CALDWELL,
                HANSHAW & VILLAMANA, P.C.

21

22

23        By   **s/**
              Barry Kirschner
              Attorneys for Plaintiff

24

25

26

WATERFALL, ECONOMIDIS
5210 E WILLIAMS CIR #800
TUCSON, AZ 85711
520-745-7810

BK/gg/5/16/06
Resp Defs Obj Magistrate Order FNL.wpd                    9

1

ORIGINAL of the foregoing filed
electronically May 16, 2006 with:

2

3

U. S. District Court of Arizona
405 W. Congress
Tucson, AZ 85701

4

COPY of the foregoing provided through NEF to:

5

6

Timothy R. Hyland, Esq.
Dominic L. Verstegen, Esq.
Kunz, Plitt, Hyland

7

  Demlong & Kleifield, P.C.
3838 N. Central Ave., Ste. 1500

8

Phoenix, AZ 85012-1902
Attorneys for Defendants:

9

10

COURTESY COPIES of the foregoing and the NEF
delivered May 16, 2006 to Judge CKJ (JCG)

11

12

By  s/Glades Guisinger

13

14

15

16

17

18

19

20

21

22

23

24

25

26

WATERFALL, ECONOMIDIS
5210 E WILLIAMS CIR #800
TUCSON, AZ 85711
520-745-7810

BK/gg/5/16/06
Resp Defs Obj Magistrate Order FNL.wpd

10