WATERFALL, ECONOMIDIS,
CALDWELL, HANSHAW & VILLAMANA, P.C.
5210 E. Williams Circle, #800
Tucson, AZ 85711
(520) 745-7810
Fax (520) 745-1279

Barry Kirschner/SBN 005592
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| ALAN WRIGHT,<br>Plaintiff,<br><br>v.<br><br>RAYTHEON COMPANY SHORT TERM DISABILITY PLAN, RAYTHEON COMPANY LONG TERM DISABILITY PLAN, and METROPOLITAN LIFE INSURANCE COMPANY,<br>Defendants. | No.: CIV 05-604 TUC CKJ (JCG)<br><br>**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |

For the reasons set forth below, Plaintiff's Motion for Summary Judgment should be granted.[1]

## I. Introduction and Basic Facts

Alan Wright ("Wright") was a 56 year old Senior Security Specialist at Raytheon in September 2004 when his treating physician Bradley Barnett, M.D. ("Barnett") ordered him to stop working. Wright was told that if he did not stop work he could perish within one year. Barnett had given several warnings with increasing severity during 2004. Wright had suffered two heart attacks and open heart surgeries. Following his 2002 open heart surgery, there was a non-union of his sternum adding difficulties to his recovery and his ability to breathe without pain. PSOF 24-26. Wright worked with extraordinarily

[1] Docket # is the document filed with the U.S. District Court and listed on the Civil Docket Report. PSOF refers to Plaintiff's Statement of Facts.

stressful aspects of national security. PSOF 2.

Defendants denied Wright's disability claim. Wright's appeal emphasized that the sternal non-union and his pulmonary conditions were disabling, particularly when added to his heart and other medical problems. Barnett and pulmonary specialist Scott Bronnimann, M.D. ("Bronnimann") tested Wright's lungs and found them far below normal and predicted capacity, confirming moderately severe restrictive lung disease. His critical lung capacities varied from 26% to 62% of normal. PSOF 28-32. Metropolitan Life Insurance Company ("MetLife") denied the appeal after sending Wright's file for a paper review to a Network Medical Review ("NMR") cardiologist, Michael J. Rosenberg, M.D. ("Rosenberg"). Rosenberg continually qualified his opinions as from a cardiac viewpoint only, and specifically stated that other co-morbidities such as lung disease were outside the scope of his opinions. PSOF 45-46. After the Court's December 26, 2007 Order compelling discovery, Docket # 56, Defendants admitted that "No medical doctor considered pulmonary disability as a factor in arriving at a conclusion that Wright was not disabled." PSOF 54.

Wright's statement explaining his job functions and deterioration from 2002-2004 was never addressed by the reviewing doctor. PSOF 26 and 3. Rosenberg's referring organization had accumulated dramatically increased business from MetLife to perform paper reviews on its disability claims. During the years from 2001 to 2005, NMR increased its market share for MetLife medical reviews from $79,410 to $2,063,890. PSOF 41.

## II. FRCP 56

Summary judgment is proper where there is no genuine issue of material facts and these undisputed facts establish the movant entitled to judgment. *Matsuhita Elec. Indus. Co. v Zenith Radio Corp.*, 475 U.S. 574, 585-88 (1986).

/ / /

WATERFALL, ECONOMIDIS
5210 E WILLIAMS CIR #800
TUCSON, AZ 85711
520-745-7810 FAX 520-745-1279

## III. An Administrator Acting Reasonably Would Have Granted Wright's Disability Appeal. Wright's Pulmonary Medical Problems Are Disabling.

Two treating physicians tested Wright's pulmonary functions and concluded that the problems were of such severity that he should no longer work. PSOF 29-32. Barnett described Wright's testing from February 2005:

> "Patient's data demonstrated moderate obstruction with his forced vital capacity representing only 53% of that predicted for him by the standard protocol. Even worse, his forced expiratory fraction 25/75 percent was only 37% of the predicted value. In other words, with regard to the elasticity function of the lung, the patient had a 63% reduction in function compared to a normal individual."

*See* PSOF Exhibit 1, AR 494-498, Barnett's March 25, 2005 letter.

Lung specialist Bronnimann described his testing with similar results:

> "PULMONARY FUNCTION REPORT:
>
> Pulmonary functions consist of spirometry, lung volumes, and diffusion. Spirometry shows a vital capacity of 3.10 liters, which is 62% of predicted. The FEV1 is 1.87 liters, which is 53% of predicted, and the FEF 25-75 is 49% of predicted. These values indicate a moderate restrictive lung impairment. There is also a very mild degree of airflow obstruction at the level of small airways. After administration of bronchodilator, there is no improvement in airflow. Examination of the flow volume loops indicate some flattening of the expiratory and inspiratory limbs. This pattern can indicate intrathoracic airway obstruction. Lung volumes confirm a significant restrictive lung impairment with a total lung capacity of 52% of predicted and the residual volume 26% of predicted. Diffusion is markedly reduced but it does correct for alveolar volume. This indicates that the decrease in diffusion is directly related to the reduced alveolar volume within the thorax. In summary, there is a moderate severity in restrictive lung impairment and a very mild airflow obstruction present on pulmonary function tests. In addition, consideration should be given to a fixed intrathoracic airway obstruction given the shape of a flow volume curve."

*See* PSOF Exhibit 1, 5/11/05 Report of Bronnimann at AR 431.

> "My impression is the patient has likely a mixed obstructive and restrictive lung impairment and he may have underlying obstructive sleep apnea as well. I think to quantify his lung function it is important to do formal pulmonary function tests with oxygen saturation at rest and with exercise. This is scheduled, as well as a sleep study, to rule out significant obstructive sleep apnea. Based on these, I would be better able to comment on his underlying lung function. The patient clearly has markedly reduced exercise capability due to his physical size and the

WATERFALL, ECONOMIDIS
5210 E WILLIAMS CIR #800
TUCSON, AZ 85711
520-745-7810 FAX 520-745-1279

difficulty that the nonunion of the sternum creates for him."

*See* PSOF Exhibit 1, 4/27/05 Report of Bronnimann at AR 481-482.

Defendants had a duty to make a reasoned assessment of whether the **total combination** of a claimant's impairments justified a disability finding, even if no single impairment standing alone would warrant the conclusion. PSOF 44[2] Defendants failed to perform that duty. Defendants admit that no medical doctor considered Wright's pulmonary disability and concluded that he could work. PSOF 55. Wright's pulmonary function on a number of categories was less than half of the vital capacity predicted. There is no question that he suffers from restrictive lung disease. PSOF 27-33.

Defendants gave no consideration to the pulmonary disability of Wright. Rosenberg was the only non-treating doctor consulted following Wright's administrative appeal. Rosenberg, a cardiologist, continually qualifies his remarks from a "cardiovascular" standpoint and states that he did not consider other co-morbities of Wright including restrictive lung disease. PSOF 45-47. Rosenberg had no idea of Wright's occupational responsibilities. There is no indication that he was provided or read Wright's detailed description of his occupation and how his disability affected his performance. Rosenberg's commented, "Mr. Wright's occupation is described as sedentary." *Compare* PSOF 26 and 3.

Wright's disabled status should be recognized under any standard of review.

## IV. *Glenn v. Metropolitan Life* confirms that Fiduciary conflicts of interest must be weighed as a factor in deciding abuse of discretion.

> "ERISA . . . sets forth a special standard of care upon a plan administrator, namely, that the administrator 'discharge [its] duties' in respect to discretionary claims processing 'solely in the interests of the participants and beneficiaries' of the plan, § 1104(a)(1); it simultaneously

---

2 *See Nikola v. Group Life Assurance*, 2005 WL 1019095 (N.D.Ill. 8/5/05); *Fulaytor v. Prudential Ins. Co.*, 2007 WL 433580 (D.Ariz. 2/6/07).

WATERFALL, ECONOMIDIS
5210 E WILLIAMS CIR #800
TUCSON, AZ 85711
520-745-7810 FAX 520-745-1279

> underscores the particular importance of accurate claims processing by insisting that administrators 'provide a 'full and fair review' of claim denials'."

*Metropolitan Life Ins. Co. v. Glenn*, __ S.Ct.__, 2008 WL 2444796 (U.S.) citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 113 (1989).

*Glenn* reinforces the holding and reasoning of *Abatie v. Alta Health and Life Insurance Company*, 458 F.3d 955 (9th Cir. 2006) ***en banc.*** *Abatie* overruled the tests stated in *Atwood v. Newmont Gold Company*, 45 F.3d 1317 (9th Cir. 1995). *Atwood* was wrong in three ways; its burden shifting, its failure to consider the motives and interests of a conflicted ERISA fiduciary in denying claims to protect its own financial interests, and its rewarding plan administrators who might suppress dissent and deny claims with as little explanation as possible. *Id.* at 966-67.

There are many factors which should be weighed to determine whether an abuse of discretion has occurred. A conflict of interest or a procedural irregularity should not hide from judicial scrutiny. *Id.* at 972. Courts may consider when a plan administrator did not provide a full and fair review, and may take additional evidence to consider a conflict of interest when the irregularities have prevented full development of the administrative record ("AR"). *Id.* at 972-973.

Defendants have abused their discretion in denying Wright's claim and appeal.

## V. Defendants Have Acted Unfairly and With A Conflict of Interest Towards Wright.

### A. Financial incentives to Defendant Insurer and their medical providers evidence bias.

MetLife is the funding source for payments from the Raytheon Company short term disability policy. MetLife is also the claims administrator for the Raytheon Company short term and long term disability policy. *See* Docket #49 and DSOF 4-6 and 9. Wright's legal action is for payment under the short term disability and long term disability plans. MetLife has a financial interest both as a funding source and as

WATERFALL, ECONOMIDIS
5210 E WILLIAMS CIR #800
TUCSON, AZ 85711
520-745-7810 FAX 520-745-1279

administrator. Insurance companies must be accountable for their conflicts of interest. *Metropolitan Life Ins. Co. v Glenn*, 554 U.S. ___, 2008 (decided June 19, 2008).

MetLife's chosen vendors in this matter are medical providers who also have financial interests in being repeatedly retained by benefit plans. The original paper reviewing physician, Amy Hopkins, M.D. ("Hopkins") grew her market share from MetLife from $119,775 in 2001 to $145,520 in 2004. The total paid to Hopkins during those four years by MetLife alone is $498,832.51. PSOF 42. NMR, the provider of Rosenberg's opinion to MetLife, has increased its market share with that provider from $79,410 annually to $2,063,890 from 2001 to 2005. PSOF 41-42. MetLife claims that it cannot calculate the amount it has paid for Rosenberg's reviews. PSOF 41.

This Court has previously noted in its December 4, 2006 Order, Docket # 31:

> However, the Ninth Circuit has recognized that there is an inherent conflict of interest "when benefit plans repeatedly hire particular physicians as experts." *Regula v. Delta Family-Care Disability Survivorship*, 266 F.3d 1130, 1143 (9th Cir. 2001), abrogated on other grounds, *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 832, 123 S.Ct. 1965, 155 L.Ed.2d 1034 (2003) ("[T]reating physician rule" has no application in ERISA cases; plan administrators are not required to accord special deference to the opinions of treating physicians; "we [do not] question the Court of Appeals' concern that physicians repeatedly retained by benefits plans may have an incentive to make a finding of 'not disabled' in order to save their employers money and to preserve their own consulting arrangements."); *see also Abromitis v. Continental Cas. Co./CNA Ins. Companies*, 261 F.Supp. 2d 388, 391 (W.D.N.C. 2003) ("judges are not oblivious to the influence wielded by companies who can afford to provide large amounts of business to consultants who render opinions in their favor").

*Caplan v. CNA Financial Corp.*, 544 F.Supp2d 984, 991-92 (N.D. Cal. 2008) used data regarding the close relationship between Hartford Insurance and University Disability Consortium ("UDC") as support for concluding the insurance company had acted with a conflict of interest.

**B. Raytheon makes long-term disability review burdensome, contrary to fiduciary behavior, and fundamental fairness.**

Congress explained its intent in passing ERISA:

WATERFALL, ECONOMIDIS
5210 E WILLIAMS CIR #800
TUCSON, AZ 85711
520-745-7810 FAX 520-745-1279

> "It is hereby declared to be the policy of this chapter to protect interstate commerce and interests of participants in employee benefit plans and their beneficiaries, by requiring the disclosure and reporting to participants and beneficiaries of financial and other information with respect thereto, by establishing standards of conduct, responsibility and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts."

ERISA § 2, 29 U.S.C. § 1001(b).

Defendants' position is that Wright's only substantive relief in this matter, if the Court decides after this hard fought litigation that he should prevail, is an award of 13 weeks of benefits. PSOF 35. According to Defendants, Wright would <u>only then become eligible</u> to apply for long-term disability benefits. The same administrators who have devised this scheme, so inconsistent with the intent of Congress, could again deny his benefits, force litigation, and postpone benefit payment four more years. PSOF 34-36. The U.S. Supreme Court reminded this same insurer, MetLife, just days ago that its duty with respect to fiduciary claims is to perform solely in the interest of participants and beneficiaries of the Plan. *Glenn, supra.*

The law does not require the beneficiaries to perform a futile act. *Dozier v. Sunlife Assur. Co. Of Canada*, 466 F. 3d 532, 536-37 (6th Cir. 2006). Defendants show disdain for the beneficiaries and the Congressional purpose of ERISA with this argument. A fiduciary with a conflict of interest should not be allowed to be so abusive to beneficiaries or the system itself.

*Caplan v. CNA Financial Corp.*, 544 F.Supp2d 984, 990-91 and notes 3-4 (N.D. Cal. 2008) discussed a fiduciary's attempt to delay consideration of the long-term benefit similar to what Defendants argue in the case at bar. *Caplan* used common sense in holding that the insurance company/claim administrator had a full opportunity to consider the merits of claimant's appeal. Since all relevant parties needed for relief were before the court, it was not necessary to give the beneficiary only a sliver of relief following lengthy litigation.

WATERFALL, ECONOMIDIS
5210 E WILLIAMS CIR #800
TUCSON, AZ 85711
520-745-7810 FAX 520-745-1279

**C. Failure to evaluate the totality of Wright's disabling illness.**

Wright's pulmonary disabilities were described in Plaintiff's Memorandum infra at pages 2-5. Defendants' failure to address the combination of impairments from a pulmonary point of view violates their duty. Defendants long refused to admit that they had no medical doctor who considered pulmonary disability as a factor in arriving at a conclusion that Wright was able to work. This demonstrates bias and bad faith. Defendants' unreasonable position caused expense and delay to its beneficiary. Finally, Defendants admitted both a duty to consider the pulmonary component of Wright's disability and that they have no evidence that a doctor supports their conclusion adverse to Wright. PSOF 45 and 54.

**D. Failure to monitor the biases of its process and the words and logic of its paper reviewing physicians.**

1. Cherry-picking to make a case instead of setting forth facts and opinion is evidence of one type of conflict of interest. (*Fulayter v. Prudential Ins. Co.*, 2007 WL 433580 (D. Ariz. 2/6/07, slip copy page 10.) The decision by MetLife to not seek a reviewer and independent opinion of Wright's pulmonary problems, and its blind acceptance of the Rosenberg review, is "cherry picking". *Compare* DSSOF 45-47 and 27-33. Rosenberg's work reflects a biased manner. Rosenberg went out of his way to minimize the problems described by pulmonologist Bronnimann. Bronnimann described the pulmonary function tests as establishing that the diffusion was **markedly** reduced. Rosenberg deleted the word "markedly" in his brief recitation of Bronnimann's note. PSOF 48 and PSOF 51. Bronnimann mentioned that the diffusion corrects for alveolar volume which means only that there is no underlying scarring in the lungs. It does not imply that the limited diffusion is not significant as Rosenberg implied when he changed the language to "The diffusion capacity was reduced but corrected normally for alveolar volume." PSOF 48.

WATERFALL, ECONOMIDIS
5210 E WILLIAMS CIR #800
TUCSON, AZ 85711
520-745-7810 FAX 520-745-1279

Defendants did not address in any way (other than by accepting conclusions enabling them to avoid payment of benefits to Wright) the manipulations of language by Rosenberg which minimized the lung and restrictive lung disease problem of Wright. PSOF 51. This cherry picking is unfair and a conflict of interest.

2. Rosenberg emphasized obesity, and barely mentioned Wright's sternal non-union as a reason for his de-conditioned state. There was no mention of the four stress tests where Wright progressively was able to exercise less and less. On the other hand, Rosenberg comments "objective evidence is sparse in the record." AR 162. *Compare* PSOF 15-18, 20 and 26. The fact that Wright was not well enough to safely perform for the stress test is more significant than the absence of data because of his physical inability to perform. Bronnimann's opinion is that even with a substantial weight loss it would not reverse a significant portion of Wright's restrictive lung abnormality. PSOF 48-51. The AR established Wright tried but was unable to exercise. PSOF 26. Rosenberg never bothered to learn of Wright's efforts. PSOF 3. Rosenberg implied Wright was overweight and chose not to improve his condition.

3. Rosenberg continually limited the scope of his review to "cardiac only". Wright attempted to conduct discovery which would have honed in on Defendants' contention that the pulmonary disability was addressed by a doctor. Those attempts were resisted. Finally the Court granted Wright's Motion to Compel. 12/26/07 Order, Docket # 56 pages 12-13 and PSOF 54. Defendants then admitted that no medical doctor who considered Wright's pulmonary condition concluded Wright was able to work. PSOF 55.

**E. Defendants have a financial incentive to place financial pressure on Wright (and similarly situated claimants).**

The disability benefits payable by Defendants if beneficiaries are forced by financial necessities to retire instead of receive private disability insurance may be

WATERFALL, ECONOMIDIS
5210 E WILLIAMS CIR #800
TUCSON, AZ 85711
520-745-7810 FAX 520-745-1279

reduced. PSOF 56. Disability insurance is a "safety net" product, designed to avert further financial disaster after medical problems have caused the inability to perform a beneficiary's occupation.[3] Defendants operate under motivations inconsistent with the intent expressed by Congress when it passed ERISA to act for the benefit of participants and beneficiaries.

## VI. **REMEDIES**

The decision denying Wright's appeal should be reversed with entry of judgment for back benefits, continuing benefits, attorneys' fees and costs. *Booten v. Lockheed Medical Benefit Plan*, 101 F.3d 1461, 1464-65 (9th Cir. 1997); *Grosz-Salomon v. Paul Revere Life Insurance Co.*, 237 F.3d 1154, 1163 (9th Cir. 2001); *Snow v. Standard Ins. Co*, 87 F.3d 327, 333 (9th Cir. 1996); *Dabertin v. HCR Manor Care*, 373 F.3d 822, 832 (7th Cir. 2004).

Defendants advocate that the judgment of the Court in this matter must be limited to13 weeks of benefits. A non-conflicted fiduciary would consider disability insurance is a safety net insurance where workers should not be forced to wait four years before they become eligible to apply for a long-term disability benefit. Defendants' position is contrary to Congressional intent, their duties as fiduciaries, and common sense. 29 U.S.C. § 1001(b); 1104(a)(1); and *Metlife v. Glenn, supra.*

Any attempt by Wright to have his information considered as a long-term disability application would have been futile pre-litigation as it has been after litigation began. The law does not require a futile act. *Dozier v. Sunlife Assur. Co. of Canada*, 466 F.3d 532, 536-37 (6th Cir. 2006). The standards for accepting Wright's short-term disability claim and long-term disability claim are indistinguishable. The administrators responsible for making the determinations are the same. The Long Term

---

[3] Wright's disability insurance is in the own occupation and not the any occupation standard for purposes of this litigation and the AR.

WATERFALL, ECONOMIDIS
5210 E WILLIAMS CIR #800
TUCSON, AZ 85711
520-745-7810 FAX 520-745-1279

and Short Term Disability Plans are parties to this action, represented by the same counsel. Early on at the January 24, 2006 joint Report of Scheduling Conference, docket 16 at page 7, # 3-5, stated to the Court, "All parties necessary to provide complete relief have been properly served." This Court is in the position to grant Wright full relief, and it should. *Caplan, Supra.*

## VII. CONCLUSION

For the reasons set forth above, Wright should be awarded short-term and long-term disability benefits, back benefits, continuing disability benefits, and Wright's counsel should be provided the opportunity to apply to the Court for an award of attorneys' fees and costs in this matter.

RESPECTFULLY SUBMITTED June 30, 2008

WATERFALL, ECONOMIDIS, CALDWELL,
HANSHAW & VILLAMANA, P.C.

By s/Barry Kirschner
Attorneys for Plaintiff

WATERFALL, ECONOMIDIS
5210 E WILLIAMS CIR #800
TUCSON, AZ 85711
520-745-7810 FAX 520-745-1279

**CERTIFICATE OF SERVICE**

I hereby certify that on June 30, 2008, I electronically transmitted the foregoing document to the United States District Court for the District of Arizona using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Timothy R. Hyland, Esq.
Dominic L. Verstegen, Esq.
Kunz, Plitt, Hyland
Demlong & Kleifield, P.C.
3838 N. Central Ave., Ste. 1500
Phoenix, AZ 85012-1902
Attorneys for Defendants:

By s/Glades Guisinger

WATERFALL, ECONOMIDIS
5210 E WILLIAMS CIR #800
TUCSON, AZ 85711
520-745-7810 FAX 520-745-1279

BK/gg/6/28/08
Plt MSJ FINAL.wpd

12